**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Uriel LARA–VELASQUEZ,**
**Defendant–Appellant.**

**No. 90–8125.**

United States Court of Appeals,
Fifth Circuit.

Dec. 11, 1990.

Christine W. Kelso, Asst. Federal Public Defender, Lucien B. Campbell, Federal Public Defender, El Paso, Tex., for defendant-appellant.

Krysta Leinenkugel and Leroy Morgan Jahn, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before THORNBERRY, JOHNSON and DAVIS, Circuit Judges.

JOHNSON, Circuit Judge:

Uriel Lara–Velasquez ("Lara–Velasquez") appeals his convictions and sentences on two counts of controlled substances violations: importation of marijuana into the United States from Mexico in violation of 21 U.S.C. §§ 952(a), 960(a)(1) (1988), and possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1988). This Court affirms Lara–Velasquez's convictions, but vacates his criminal sentences and remands for resentencing.

## I. FACTS AND PROCEDURAL HISTORY

On October 1, 1989, Uriel Lara–Velasquez drove a red pickup truck with a fiberglass camper shell and California license plates across the international border into El Paso, Texas. He presented an amnesty card to the customs inspector at the Paso Del Norte Port of Entry and attempted to answer the inspector's routine questions. The inspector noticed that Lara–Velasquez was nervous; he was extremely "helpful" in answering the inspector's questions. Further, the inspector noticed that the camper shell on the pickup truck was a type commonly used to smuggle controlled substances across the border. Suspecting that the camper shell might conceal marijuana, the customs inspector directed Lara–Velasquez to secondary inspection.

At secondary inspection, customs officials closely examined the pickup truck. As the officials began to tap the sides of the camper shell for hollow spots, Lara–Velasquez suddenly moved backwards. The officials interpreted his movement as an attempt to escape and physically restrained Lara–Velasquez. A subsequent canine inspection of the vehicle revealed thirty-eight packages of marijuana cleverly concealed in a hidden compartment in the camper

shell.[1] Federal agents escorted Lara–Velasquez to a detention cell.

Lara–Velasquez waived his legal rights and consented to an interview with a special agent of the customs service. Lara–Velasquez initially told the agent that he had flown into El Paso to pick up a cousin and drive him to California. Later in the interview, Lara–Velasquez changed his story. He claimed that he and his brother had driven from California in the truck and crossed the border into Juarez. Lara–Velasquez informed the agent that he had left the truck unsupervised for only one hour in the three days he and his brother had been in Juarez. However, when the agent suggested that it would have taken longer than an hour to complete the hidden compartment on the camper shell, Lara–Velasquez stated that he and his brother had stayed in a hotel in Juarez, leaving the truck unoccupied for three days.

A grand jury indicted Lara–Velasquez on counts of importation of marijuana into the United States from Mexico[2] and knowing possession of marijuana with the intent to distribute.[3] The case proceeded to trial on December 8, 1989. Lara–Velasquez, testifying on his own behalf, asserted an altogether different story from the account he gave the customs agent in his post-arrest interview. Lara–Velasquez testified that his father's cousin, "Uncle" Tony Alvarez ("Alvarez"), had encouraged him to fly to Mexico. Although his parents warned Lara–Velasquez that Alvarez was a "bad man," Lara–Velasquez accepted Alvarez's offer of airline tickets to Guadalajara. After Lara–Velasquez spent some time in Guadalajara visiting family, Alvarez apparently insisted that Lara–Velasquez return to the United States. Lara–Velasquez testified that he and Alvarez traveled to Juarez, Mexico, where Alvarez gave Lara–Velasquez the pickup truck and $100 cash.

At trial, Lara–Velasquez insisted that he was completely unaware of the existence of marijuana in the truck's camper shell. Indeed, he claimed that he had never smoked marijuana and could not recognize its smell. He maintained that he did not examine the truck, and simply followed—without question—Alvarez's instructions to drive the truck across the border. Federal agents at trial admitted that an ordinary person would not recognize the camper shell as a type commonly used to smuggle contraband, but suggested that the two different white shades of paint on the interior of the camper shell would raise an ordinary person's suspicions.

In its charge, the district court instructed the jury, on its own motion and over Lara–Velasquez's objection, as follows:

> The word knowingly as that term has been used from time to time in these instructions means that the act was done voluntarily and intentionally, not because of mistake or accident. You may find that the defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. While knowledge on the part of the defendant can not be established merely by demonstrating that the defendant was negligent, careless, or foolish, *knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact.*

---

1. Customs officials discovered a trap door on the top of the camper shell. The door was covered with decal tape and bondo and, therefore, was completely unnoticeable from the front or the side of the pickup truck. Testimony at trial described the alterations to the camper shell as a "professional job." Record Vol. II at 63.

2. *See* 21 U.S.C. § 952(a) (1988), which provides in pertinent part:
(a) It shall be unlawful to import into the customs territory of the United States from any place outside thereof (but within the United

States), or to import into the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I of this chapter, or any narcotic drug in schedule III, IV, or V of subchapter I of this chapter....

3. *See* 21 U.S.C. § 841(a) (1988), which provides in pertinent part:
(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....

Record Vol. II at 157 (emphasis added). After substantial deliberation, the jury returned a guilty verdict on both counts of the indictment.

At the sentencing hearing, defense counsel urged that the district court assess the minimum forty-six month sentence for Lara–Velasquez's conviction under the Sentencing Guidelines. The defense counsel argued that rehabilitation could be accomplished in that time period and cited Lara–Velasquez's continuing school attendance as evidence of his rehabilitative potential. The district court, however, rejected the defense counsel's plea:

> Number one, to the rehabilitation aspect. Under the guidelines, there isn't any. Guidelines are there for one thing according to the policy and that's to punish.

Record Vol. III at 8. The district court subsequently sentenced Lara–Velasquez to fifty-one months' imprisonment on each count and ordered that the sentences run concurrently. In addition, the district court assessed a five-year term of nonreporting supervised release after completion of the prison term.

## II. DISCUSSION

On appeal, Lara–Velasquez raises two arguments. First, he complains that the evidence at trial was insufficient to support the district court's "deliberate ignorance" instruction. Second, he complains that the district court improperly determined that his rehabilitative potential was irrelevant to the calculation of his criminal sentence within the applicable Sentencing Guideline range.

### A. Deliberate Ignorance Instruction

■ The standard of review of a defendant's claim that a jury instruction was inappropriate is "whether the court's charge, as a whole, is a correct statement of the law *and* whether it clearly instructs jurors as to the principles of law *applicable to the factual issues confronting them.*" *United States v. Stacey*, 896 F.2d

75, 77 (5th Cir.1990) (quoting *United States v. August*, 835 F.2d 76, 77 (5th Cir.1987)) (emphasis added). The court's charge not only must be legally accurate, but also factually supportable; the court "may not instruct the jury on a charge that is not supported by evidence." *United States v. Ortega*, 859 F.2d 327, 330 (5th Cir.1988), *cert. denied*, 489 U.S. 1027, 109 S.Ct. 1157, 103 L.Ed.2d 216 (1989).[4] In assessing whether the evidence sufficiently supports the district court's charge, this Court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the Government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Chen*, 913 F.2d 183, 186 (5th Cir.1990).

■ A conviction for the crime of possession of marijuana with the intent to distribute requires that the Government prove three elements: (1) knowing (2) possession of marijuana (3) with the intent to distribute it. *United States v. Diaz–Carreon*, 915 F.2d 951, 953 (5th Cir.1990); *United States v. Williams–Hendricks*, 805 F.2d 496, 500 (5th Cir.1986); *United States v. Vergara*, 687 F.2d 57, 61 (5th Cir.1982). A conviction for the crime of importation of marijuana requires proof that the defendant knowingly played a role in bringing marijuana from a foreign country into the United States. *Diaz–Carreon*, 915 F.2d at 953; *Williams–Hendricks*, 805 F.2d at 500. In either event, the Government must establish beyond a reasonable doubt the criminal defendant's "guilty knowledge."

■ In the instant case, the district court instructed the jury that it could infer guilty knowledge "if the defendant *deliberately blinded* himself to the existence of a fact." Record Vol. II at 157 (emphasis added). While the court cautioned the jury that guilty knowledge could not be established merely by evidence of the defendant's negligence or carelessness, it instructed the jury that it could find guilty knowledge if it determined that "the defendant deliberate-

---

**4.** In the instant case, Lara–Velasquez concedes that the district court's deliberate ignorance in- struction is a correct statement of the law.

ly closed his eyes to what would otherwise have been obvious to him." *Id.* The district court's instruction is a common example of a "deliberate ignorance" instruction.[5] This Court has consistently upheld deliberate ignorance instructions as long as sufficient evidence supports their insertion in the charge. *Chen,* 913 F.2d at 191; *United States v. de Luna,* 815 F.2d 301, 302 (5th Cir.1987).

 The term deliberate ignorance "denotes a conscious effort to avoid positive knowledge of a fact which is an element of an offense charged, the defendant choosing to remain ignorant so he can plead lack of positive knowledge in the event he should be caught." *United States v. Restrepo-Granda,* 575 F.2d 524, 528 (5th Cir.1978), *cert. denied,* 439 U.S. 935, 99 S.Ct. 331, 58 L.Ed.2d 332 (1978). The key aspect of deliberate ignorance is the *conscious* action of the defendant—the defendant *consciously* attempted to escape confirmation of conditions or events he strongly suspected to exist. As one opinion has colloquially noted, deliberate ignorance is reflected in a criminal defendant's actions which suggest, in effect, "Don't tell me, I don't want to know." *de Luna,* 815 F.2d at 302. The purpose of the deliberate ignorance instruction is to inform the jury that it may consider evidence of the defendant's charade of ignorance as circumstantial proof of guilty knowledge. "[T]he instruction is nothing more than a refined circumstantial evidence instruction properly tailored to the facts of a case...." *United States v. Manriquez Arbizo,* 833 F.2d 244, 248 (10th Cir.1987).

 The deliberate ignorance instruction, however, is not appropriate in all criminal cases. Because the instruction permits a jury to convict a defendant without a finding that the defendant was actually aware of the existence of illegal conduct, the deliberate ignorance instruction poses the risk that a jury might convict the defendant on a lesser negligence standard—the defendant *should* have been aware of the illegal conduct. *United States v. Alvarado,* 838 F.2d 311, 314 (9th Cir.1987), *cert. denied,* 487 U.S. 1222, 108 S.Ct. 2880, 101 L.Ed.2d 915 (1988); *United States v. Beckett,* 724 F.2d 855, 856 (9th Cir.1984). Accordingly, the district court should not instruct the jury on deliberate ignorance when the evidence raises only the inferences that the defendant had actual knowledge or no knowledge at all of the facts in question. *United States v. Perez-Padilla,* 846 F.2d 1182, 1183 (9th Cir.1988). If the choice is simply between a version of the facts in which the defendant had actual knowledge, and one in which the defendant was no more than negligent or stupid, the deliberate ignorance instruction is inappropriate.[6]

 The instruction is "properly given only when [the] defendant claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate ignorance." *United States v. Pacific Hide & Fur Depot, Inc.,* 768 F.2d 1096, 1098 (9th Cir.1985). *See also United States v. Batencort,* 592 F.2d 916, 918 (5th Cir.1979) (the instruction should be given only when "there are facts that point in the direction of deliberate ignorance.") (quoting *United States v. Murrieta-Bejarano,* 552 F.2d 1323, 1325 (9th Cir.1977)). The circumstances which will support the deliberate ignorance instruction are rare. The evidence at trial must raise two inferences:

(1) the defendant was subjectively aware of a high probability of the existence of the illegal conduct; and

(2) the defendant purposely contrived to avoid learning of the illegal conduct.

---

**5.** Some courts have described the deliberate ignorance instruction as a *"Jewell* instruction," named in honor of the first opinion to approve the use of such an instruction. *United States v. Jewell,* 532 F.2d 697 (9th Cir.), *cert. denied,* 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976).

**6.** The opinions of this Court, as well as those of other circuits, simply do not support the Government's assertion that the deliberate ignorance instruction is appropriate "whenever knowledge is a contested element [of the offense]."

*Alvarado*, 838 F.2d at 314.[7]

The first prong of this test protects a defendant from being convicted for what he *should* have known. It prevents the Government from establishing that a defendant had the requisite guilty knowledge merely by demonstrating that a reasonable person would have been aware of the illegal conduct. The defendant may not be convicted simply because he was foolish, stupid or negligent. In other words, the first prong permits a deliberate ignorance instruction only when the Government presents facts that support an inference that the particular defendant *subjectively* knew his act to be illegal and not when the Government presents facts that tend to support an inference that a reasonable person would have known the act to be illegal. The second prong of the deliberate ignorance test can be reached only if the first prong has been established; a defendant could not purposely avoid learning of illegal conduct unless he were subjectively aware that the high probability of illegal conduct exists.

 Nonetheless, the same evidence that will raise an inference that the defendant had actual knowledge of the illegal conduct ordinarily will also raise the inference that the defendant was subjectively aware of a high probability of the existence of illegal conduct. Thus, in many cases, the propriety of a deliberate ignorance instruction depends upon evidence that the defendant purposely contrived to avoid learning of the illegal conduct—the second prong of the deliberate ignorance test. The defendant's purposeful contrivance to avoid guilty knowledge may be established by direct or circumstantial evidence. Courts have determined, for example, that a defendant's admission of an intent to avoid incriminating knowledge establishes the defendant's purposeful contrivance to avoid knowledge. *See, e.g., United States v. Peddle*, 821 F.2d 1521, 1523 (11th Cir.

1987) (defendants suspected that a boat they were hired to sail concealed illegal substances, but did not inspect the boat because they "didn't even want to know"); *Batencort*, 592 F.2d at 918 (defendant hired to transport a suitcase admitted that "he had something in the suitcase that he shouldn't, but he didn't know exactly what"). Courts also have determined that the circumstances of the defendant's involvement in the criminal offense may have been *so overwhelmingly suspicious* that the defendant's failure to question the suspicious circumstances establishes the defendant's purposeful contrivance to avoid guilty knowledge. *See, e.g., de Luna*, 815 F.2d at 302 (defendant offered $10,000 to deliver a load of cabbage into the United States—in a truck which concealed marijuana—even though the job usually paid only $1000); *Restrepo-Granda*, 575 F.2d at 529 (defendant given a set of coathangers on which to carry his clothes into the United States; the coathangers, which concealed cocaine, were noticeably oversized and unusual).

 Appellate review of a deliberate ignorance instruction is necessarily a fact-intensive endeavor. To determine the validity of the instruction, this Court must carefully examine the totality of the evidence. In the instant case, we conclude that the evidence at trial, viewed in the light most favorable to the Government, supported the insertion of a deliberate ignorance instruction in the charge to the jury.

First, the Government introduced evidence at trial that tended to support the inference that Lara–Velasquez was subjectively aware of the high probability that he was involved in an illegal activity. For example, the immigration inspector testified that Lara–Velasquez exhibited signs of nervousness at the border crossing. Customs officials further testified that during

7. This Court has formulated a specific variation on this requirement in criminal cases alleging the illegal importation of a controlled substance in violation of 21 U.S.C. § 952(a) (1988). The deliberate ignorance instruction is proper if the defendant "believed he was importing a controlled substance and through willful blindness failed to confirm that belief." *United States v. Restrepo-Granda*, 575 F.2d 524, 529 (5th Cir.), *cert. denied*, 439 U.S. 935, 99 S.Ct. 331, 58 L.Ed.2d 332 (1978).

their secondary inspection Lara–Velasquez made a sudden backward movement which the officials interpreted as an attempt to escape. Moreover, the federal agent who interviewed Lara–Velasquez testified that the defendant offered inconsistent accounts of his stay in Juarez. All of this testimony provided the district court a revealing glimpse of Lara–Velasquez's state of mind. From the testimony, the court could reasonably have concluded that the Government satisfied the first prong of the deliberate ignorance test. *See, e.g., Diaz–Carreon*, 915 F.2d at 954–55 (nervousness and inconsistent statements); *Williams–Hendricks*, 805 F.2d at 500–01 (nervousness and inconsistent statements); *United States v. Del Aguila–Reyes*, 722 F.2d 155, 158 (5th Cir.1983) (false or inconsistent statements); *United States v. Meneses–Davila*, 580 F.2d 888, 896 (5th Cir.1978) (flight).[8]

Second, evidence at trial tended to support the inference that Lara–Velasquez purposely contrived to avoid learning of the illegal conduct. Lara–Velasquez himself admitted during trial that he failed to inspect the camper shell and he did not question Alvarez's instructions. The failure to inspect the truck or question Alvarez's instructions is an omission that takes on particular significance in light of the highly suspicious circumstances which enshrouded Lara–Velasquez prior to his attempt to cross the border:

(1) Lara–Velasquez knew that his uncle had a poor reputation;

(2) Alvarez refused to provide Lara–Velasquez the money to purchase airline tickets to the defendant's home in California, even though Alvarez had invited Lara–Velasquez to Mexico;

(3) Alvarez supplied Lara–Velasquez a pickup truck and sent him on a circuitous route back to California;

(4) the inside of the truck's camper shell was inexplicably painted two different shades of white.

These circumstances were *so overwhelmingly suspicious* that the defendant's failure to inspect the truck or question Alvarez's instructions suggests a conscious attempt to avoid incriminating knowledge, and not merely an oversight. Thus, the district court could reasonably have concluded that the evidence at trial satisfied the second prong of the deliberate ignorance test.

The evidence supported the inferences that Lara–Velasquez was subjectively aware of a high probability of the existence of illegal conduct and that he purposely contrived to avoid learning of the marijuana in the camper shell of the pickup truck. While this Court recognizes that trial courts should only rarely give deliberate ignorance instructions, we conclude that there was sufficient evidence in this case to support the district court's instruction.

### B. *Rehabilitative Potential of Defendant*

Lara–Velasquez contends that the district court erroneously concluded that the rehabilitative potential of a criminal defendant is irrelevant to the determination of the defendant's sentence within the applicable range of the Sentencing Guidelines. When a defendant challenges the district court's *factual findings* under the Sentencing Guidelines, this Court applies the "clearly erroneous" standard of review. *United States v. Paden*, 908 F.2d 1229, 1233 (5th Cir.1990). Conversely, when a defendant challenges the district court's *interpretation of the requirements* of the Sentencing Guidelines, this Court applies a less deferential de novo standard of review. *United States v. Reyes–Ruiz*, 868 F.2d 698, 701 (5th Cir.1989). In the instant case, the district court *interpreted* the Guidelines to preclude consideration of the rehabilitative potential of the defendant. Accordingly, we review Lara–Velas-

---

**8.** Each of these cases involved the question whether the evidence at trial sufficiently supported an inference of *actual knowledge*. However, as we previously noted, evidence that would support an inference that the defendant possesses actual knowledge necessarily supports an inference that the defendant was subjectively aware of a high degree of probability of the illegal conduct.

**954**

quez's appeal of his sentence de novo.[9]

■ At Lara–Velasquez's sentencing hearing, the district court asserted that it was unable to consider the defendant's rehabilitative potential as a basis for imposing the lightest sentence within the applicable Guideline range, because "Guidelines are there for one thing according to the policy and that's to punish." Record Vol. III at 8. The Government maintains that the district court properly relied upon several passages from a recent opinion of this Court:

> The sentencing guidelines do not merely change the procedures used to impose sentences, they initiate an historic shift in modern penology.... Congress abandoned the rehabilitation model that shaped penology in the Twentieth Century.... By enacting the sentencing guidelines Congress returned federal sentencing to an earlier philosophy that the punishment should fit the crime and that the main purpose of imprisonment is punishment.

*United States v. Mejia–Orosco*, 867 F.2d 216, 218 (5th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989). However, these quotations from *Mejia–Orosco* do not support the district court's conclusion that it was unable to consider rehabilitative potential as a mitigating factor *within* the applicable Sentencing Guideline range.

In *Mejia–Orosco*, the defendant challenged the district court's imposition of a ten month term of imprisonment, arguing that the Sentencing Guidelines permitted a maximum sentence of only seven months. This Court affirmed the defendant's sentence. We noted that a "sentence imposed 'outside the range of the applicable sentencing guideline' will be reversed only if it is unreasonable." *Id.* After analyzing the statutory policies of the Sentencing Guidelines, we were unable to conclude that the enhancement of the defendant's sentence was unreasonable.

■ This Court commented in *Mejia–Orosco* that, prior to the adoption of the Sentencing Guidelines, the district courts' reliance on various penological paradigms had created an unacceptable sentencing disparity. We recognized that Congress had rejected in the Sentencing Guidelines the prevailing view that courts should sentence criminal offenders according to their potential for rehabilitation and instead had asserted the fundamental premise that sentences should be "based upon the crime committed, not the offender." *Id.* By adoption of the Guidelines, Congress hoped that sentences might become more uniform. "Similar crimes should be punished similarly." *Id.* Nonetheless, we recognized in *Mejia–Orosco* that the Sentencing Guidelines could not foresee every

9. It is necessary that we explain our jurisdiction to reach the merits of this Sentencing Guidelines issue. The Sentencing Reform Act of 1984 permits a defendant to appeal an otherwise final sentence only if the sentence (1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of the Sentencing Guidelines; (3) is greater than the sentence specified in the applicable Guideline range; or (4) was imposed for an offense for which there is no Sentencing Guideline and is plainly unreasonable. 18 U.S.C. § 3742(a) (1988). *See United States v. Buenrostro,* 868 F.2d 135, 139 (5th Cir.1989) (This Court "will uphold a sentence unless it is imposed in violation of law, or is imposed as a result of incorrect application of the sentencing guidelines, or is a departure from the applicable guideline range and is unreasonable."), *cert. denied,* — U.S. ——, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990). As a practical matter, this provision insulates from appellate review sentences that fall within or below the applicable Sentencing Guideline range, un-

less the sentence was imposed in violation of law. *United States v. Pelayo–Bautista,* 907 F.2d 99, 101–02 (9th Cir.1990); *United States v. Wright,* 895 F.2d 718, 720 (11th Cir.1990); *United States v. Guerrero,* 894 F.2d 261, 267 (7th Cir.1990); *United States v. Tucker,* 892 F.2d 8, 10 (1st Cir.1989); *United States v. Colon,* 884 F.2d 1550, 1553 (2d Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989). In the present appeal, it is clear that the sentence was imposed in violation of law. Lara–Velasquez does not contend on appeal that the district court should have reduced his sentence on the basis of rehabilitative potential; instead, he argues that the district court misinterpreted its authority to consider rehabilitative potential in assessing a sentence within the applicable Guideline range. The district court's misinterpretation of its statutory authority is an error of law that taints an otherwise valid criminal sentence. *United States v. Fossett,* 881 F.2d 976, 979 (11th Cir.1989).

eventuality. *Id.* The Guidelines therefore vest considerable authority in district courts to determine an appropriate sentence—even sometimes a sentence outside the applicable Guideline range.[10] In essence, the Sentencing Guidelines authorize district courts to examine every *permissible* factor—both enhancing and mitigating—that might affect a particular term of punishment. "The sentencing judge has an obligation to consider *all* the relevant factors in a case and to impose a sentence outside the guidelines in an appropriate case." *Id.* at 219 (quoting S.Rep. No. 225, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3235) (emphasis added).

Not every relevant factor is a *permissible* factor on which a district court may base a departure from an applicable Guideline range. In *United States v. Burch*, 873 F.2d 765 (5th Cir.1989), for example, this Court determined that nothing in the Sentencing Guidelines justified departure from the applicable Guideline range on the basis that the defendant is a "gifted, talented individual." *Id.* at 768. Similarly, in *United States v. Reed*, 882 F.2d 147 (5th Cir. 1989), we determined that nothing in the Sentencing Guidelines justified departure from the applicable Guideline range on the basis that "there is something good in [the defendant]." *Id.* at 151. In each case, we relied upon *Mejia–Orosco's* explanation of the policy rationales of the Guidelines to conclude that certain individual characteristics of a criminal defendant would not support a downward departure in the defendant's sentence.

Both *Burch* and *Reed* limit the district courts' authority to justify a *downward departure* from an applicable Guideline range on a defendant's admirable character traits. Downward departures are permissible only if the circumstances on which they are based were "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b) (1988). The Sentencing Commission has already taken into consideration a defendant's individual characteristics as a basis for downward departure; it rejected the relevance of this factor. *Reed*, 882 F.2d at 151; *Burch*, 873 F.2d at 769; *Mejia–Orosco*, 867 F.2d at 218. Neither *Burch* nor *Reed*, however, have specific application in cases involving the district court's authority to assess a defendant's sentence *within* the applicable Guideline range. Because the determination of a sentence *within* the Guideline range does not require deviation from the Guidelines, the information a district court may consider in assessing sentence is necessarily quite broad: the court may consider any relevant information that the Sentencing Guidelines do not expressly exclude from consideration.[11] *See United States v. Duarte*, 901 F.2d 1498, 1499 (9th Cir.1990) ("the district court may, but need not, consider the defendant's character ... as a basis for finding a sentence within the Guideline range.").

The authors of the Guidelines determined that criminal sentences should be punitive in nature and prescribed sentencing ranges that would effectively punish convicted defendants for specific criminal acts. The

---

**10.** This Court has consistently approved the enhancement or reduction of criminal sentences on the basis of factors that the Sentencing Guidelines do not adequately take into account. *See, e.g., United States v. Rogers*, 917 F.2d 165, 169 (5th Cir.1990) (enhancement on the basis of an excessive criminal history point total); *United States v. Garcia*, 900 F.2d 45, 48 (5th Cir. 1990) (enhancement on the basis of an unusually large property loss resulting from the offense); *United States v. Martin*, 893 F.2d 73, 76 (5th Cir.1990) (reduction on the basis that Guideline calculations yield a sentencing range above the statutory maximum for the offense); *United States v. Geiger*, 891 F.2d 512, 513 (5th Cir.1989) (enhancement on the basis of seriousness of prior criminal conduct), *cert. denied,* ——

U.S. ——, 110 S.Ct. 1825, 108 L.Ed.2d 954 (1990).

**11.** The Sentencing Guidelines expressly exclude several factors from the consideration of the district court in assessing sentence, including socio-economic status and the physical condition of the defendant. Some factors, such as the emotional condition and educational skill of the defendant, are excluded from the district court's determination whether a sentence should be outside the Guidelines, but not excluded from the court's determination where within a Guideline range a sentence should fall. Sentencing Guidelines §§ 5H1.1–.10.

district courts have little authority to deviate from these prescribed ranges of punishment because such deviation would endanger the Guidelines' purpose of sentencing uniformity. Within a particular range of punishment, however, the district court has wide discretion in assessing a criminal sentence. This discretion allows the court to consider any circumstances of the offense and the offender that might justify a longer or shorter sentence within the applicable range of punishment. Thus, the specified ranges of the Sentencing Guidelines effectively accomplish Congress' stated goal that "the punishment should fit the crime;" however, within each specified range, the district court may tailor a sentence to reflect other significant factors besides punishment.

The Government argues that a district court's consideration of a defendant's individual characteristics in assessing a sentence within the applicable Guideline range breaches the Guidelines' policy that sentencing be based upon the crime committed and not the offender. This policy, however, states only a general proposition.[12] The policy that sentencing is based on the crime and not the offender operates to isolate the range of punishment; it has little effect on the district court's assessment of a sentence within an applicable range. Section 1B1.4 of the Sentencing Guidelines specifically states that in determining the sentence to impose within the Guideline range, "the court may consider, *without limitation*, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." Sentencing Guidelines § 1B1.4 (emphasis added).[13] This provision affords the district court latitude in adjusting a criminal sentence within a Guideline range to reflect particular circumstances. In the instant case, this provision would permit the district court to consider a significant aspect of Lara–Velasquez's character—his rehabilitative potential. The court ultimately may conclude that Lara–Velasquez's rehabilitative potential does—or does not—warrant a lesser sentence within the applicable Guideline range. To date, however, the district court has not reached this question, concluding instead that it had no authority to consider rehabilitative potential.

In sum, the Sentencing Guidelines reject the rehabilitation model as a valid penological paradigm. The Guidelines recognize that the principal purpose of sentencing is punishment, creating sentencing ranges to effect this purpose. Even so, the Guidelines do not preclude consideration of a defendant's rehabilitative potential as a mitigating factor *within* an applicable range of punishment. Indeed, the Sentencing Guidelines expressly permit the district court to consider all relevant and permissible character traits of the defendant in

---

**12.** Certain individual characteristics of an offender, such as prior criminal conduct, have traditionally been relevant to the assessment of a criminal sentence. *See Reed,* 882 F.2d at 151; *Burch,* 873 F.2d at 769.

**13.** This provision in the Sentencing Guidelines is based upon 18 U.S.C. §§ 3553(a) & 3661 (1988). Section 3553(a) provides that "the court, in determining the particular sentence to be imposed, shall consider—(1) the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a). Section 3661 provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." *Id.* § 3661.

The Government complains that these sections were significantly modified by the enactment of the Comprehensive Crime Control Act of 1984, which provides in pertinent part that the sentencing court, in determining whether to impose a term of imprisonment and, if so, the length of the term, "shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." *Id.* § 3582(a). This provision, however, does not preclude the district court's consideration of the defendant's rehabilitative potential as a mitigating factor at sentencing. Instead, the "caution concerning the use of rehabilitation as a factor to be considered in imposing sentence is to *discourage the employment of a term of imprisonment on the sole ground that a prison has a program that might be of benefit to the prisoner.*" S.Rep. No. 225, 98th Cong., 2d Sess. 119 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3302 (emphasis added).

assessing a sentence within a particular range. Since this Court cannot conclude that the district court's interpretation of its authority under the Sentencing Guidelines was correct, we must vacate the sentence imposed by the district court and remand for resentencing.

## III. CONCLUSION

This Court is unable to conclude that the district court's insertion of a deliberate ignorance instruction in the charge to the jury was reversible error. However, we find that the district court misinterpreted its authority to consider Lara–Velasquez's rehabilitative potential as a mitigating factor at sentencing. The sentence imposed by the district court is vacated, and the case is remanded for resentencing.

AFFIRMED IN PART, VACATED AND REMANDED.