38 F.3d 1217
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Pedro A. RAMOS, Defendant-Appellant.
 No. 93-6196.
 United States Court of Appeals, Sixth Circuit.
 Oct. 12, 1994.
 
 Before: KEITH and SUHRHEINRICH, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendant-Appellant Pedro A. Ramos ("Ramos") appeals the jury verdict finding him guilty of intentionally possessing cocaine with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1). For the reasons stated below, we AFFIRM.
 
 I. Facts
 
 2
 On July 10, 1991, at approximately 3:00 a.m., Shelby County Sheriff's Department Officer James P. Dollahite ("Dollahite") observed Ramos travelling on Interstate 240 in Memphis, Tennessee at approximately 40 miles per hour. Because the minimum speed limit on the interstate is 45 miles per hour, Dollahite suspected Ramos was falling asleep and stopped the car. Ramos exited the car and produced his drivers license.
 
 
 3
 Dollahite inquired as to why Ramos was in Memphis and about ownership of the car. Ramos responded he was looking for work and was headed to a La Quinta Inn in Memphis. Ramos, however, was unable to identify the car's owner and could not produce a vehicle registration or any other proof of his right to operate the vehicle.
 
 
 4
 Dollahite called for Officer Daniels ("Daniels") and issued Ramos a traffic citation for impeding traffic. In response to Dollahite's request, Ramos orally consented to a search of the car. Dollahite gave Ramos a consent to search form and informed him he could refuse consent and not sign the form. Ramos initialed and signed the form.
 
 
 5
 After Daniels arrived, the officers opened the trunk of the car, noticed an open can of sardines and the pervasive smell of air freshener. The officers discovered a hidden compartment inside the trunk containing 15 kilograms of cocaine. The officers arrested Ramos and advised him of his Miranda rights.
 
 
 6
 The officers transported Ramos to the Shelby County Narcotics Division Interstate Office ("Interstate Office"). There, Ramos confessed he was paid $1000 to drive the car from Houston, Texas to a Memphis La Quinta Inn, abandon the car and return to Houston. Up to this point, all conversations with Ramos were in English.
 
 
 7
 FBI Special Agent Denise Conrad ("Conrad") arrived at the Interstate Office after Ramos agreed to cooperate with officers and make a controlled delivery. Officials briefed Conrad, and she re-advised Ramos of his Miranda rights in both English and Spanish. Ramos repeated his story to Conrad, adding he was unable to describe an unknown individual he was scheduled to meet in Texas after delivering the car.
 
 
 8
 Conrad called FBI Special Agent Michael Avent ("Avent") for assistance, and the two agents interviewed Ramos in both English and Spanish. Ramos never indicated his unwillingness to cooperate or requested to have an attorney present during questioning.
 
 
 9
 Two hours later, Ramos and the officers travelled to the LaQuinta Inn and attempted to make a controlled delivery. After no one appeared for several hours, the officers abandoned the operation.
 
 
 10
 On August 7, 1991, a federal grand jury indicted Ramos, charging him with unlawfully, knowingly, and intentionally possessing approximately 15 kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1). Two months later, Ramos moved to suppress the cocaine, and a United States Magistrate Judge held an evidentiary hearing and recommended the motion be granted, finding Ramos' consent was coerced and therefore invalid.
 
 
 11
 The government objected to the magistrate judge's recommendation, and after a de novo review of the record, the district court denied Ramos' motion to suppress and directed the matter to trial. On March 9, 1993, a jury found Ramos guilty as charged. On July 30, 1993, the court sentenced Ramos to 135 months incarceration, followed by five years of supervised release. This timely appeal followed.
 
 II. Discussion
 
 12
 On appeal, Ramos argues the district court erroneously:
 
 
 13
 (1) denied his motion to suppress the cocaine; and
 
 
 14
 (2) instructed the jury on the theory of deliberate ignorance.
 
 
 15
 We shall discuss each allegation of error below separately.
 
 
 16
 A. The District Court Properly Denied Ramos' Motion to Suppress Evidence
 
 
 17
 First, Ramos asserts the district court erred by denying his motion to suppress because Dollahite exceeded the scope of the underlying justification for the stop. Specifically, Ramos argues once Dollahite issued the traffic ticket, the basis for the detention ceased, and Dollahite had no grounds for any further detention or investigation of Ramos. We disagree.
 
 
 18
 In reviewing a motion to suppress, we must accept a trial court's findings of fact unless they are clearly erroneous. United States v. Coleman, 628 F.2d 961, 963 (6th Cir.1980). Conclusions of law, however, such as the determination of reasonableness pursuant to the Fourth Amendment, are reviewed de novo. Whitney v. Brown, 882 F.2d 1068, 1071 (6th Cir.1989).
 
 
 19
 First, we note Dollahite properly stopped Ramos. Traffic stops are a species of Terry investigative detentions. United States v. Pino, 855 F.2d 357, 362 (6th Cir.1988), cert. denied, 493 U.S. 1090 (1990). "The detaining officer must have an objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring before stopping the automobile." United States v. Soto, 988 F.2d 1548, 1554 (10th Cir.1993). Here, Dollahite noticed Ramos was violating the minimum interstate speed of 45 miles per hour by travelling 40 miles per hour, and that several trucks were passing Ramos. Thus, the stop and detention for impeding traffic was clearly supported by a reasonable suspicion that a traffic violation occurred.
 
 
 20
 Next, we must inquire whether Dollahite's actions after the stop were tailored to the "underlying justification" for the stop, the traffic violation. During a routine traffic stop, an officer may:
 
 
 21
 ... request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning.
 
 
 22
 United States v. Rusher, 966 F.2d 868, 876 (4th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 351 (1992) (quoting United States v. Guzman, 864 F.2d 1512, 1519 (10th Cir.1988), cert. denied, Cummins v. United States, --- U.S. ----, 112 S.Ct. 428 (1991)).
 
 
 23
 Here, Dollahite detained Ramos to determine his right to operate the vehicle, which was directly related to the initial stop. Although Ramos presented a drivers license, he was unable to produce a vehicle registration or any other proof of his right to operate the vehicle. The stop prior to the search, which lasted no more than seven minutes, was devoted to checking Ramos' license and ownership of the car and issuing a traffic citation for impeding traffic. Because Ramos produced no proof of right to operate the vehicle, Dollahite delayed him for further questioning. Ramos' inability to produce proof of his right to operate the vehicle gave Dollahite reasonable suspicion to detain Ramos for further questioning. Based on reasonable suspicions arising from Ramos' statement he did not know the car's owner, Dollahite decided to investigate further. We find that here, the short period before the search was reasonable and was not an unlawful seizure in violation of the Fourth Amendment.
 
 
 24
 B. The District Court's Deliberate Ignorance Charge to the Jury was Harmless Error
 
 
 25
 Ramos next argues the district court committed reversible error by improperly instructing the jury on deliberate ignorance. While we agree the instruction was improper, we find no error warranting reversal.
 
 
 26
 1. The Deliberate Ignorance Instruction was Inappropriate
 
 
 27
 On appeal, the standard of review of a deliberate ignorance instruction is "whether the charge taken as a whole, fairly and adequately submits the issues and applicable law to the jury." See United States v. Lee, 991 F.2d 343, 350 (6th Cir.1993) (quoting United States v. Buckley, 934 F.2d 84, 87 (6th Cir.1991)) (quoting United States v. Martin, 740 F.2d 1352, 1361 (6th Cir.1984), cert. denied, 472 U.S. 1029 (1985). We review de novo the proper application of a deliberate ignorance instruction. United States v. de Francisco-Lopez, 939 F.2d 1405, 1409 (10th Cir.1992).
 
 
 28
 The deliberate ignorance charge is appropriate where evidence shows the defendant attempted to escape conviction "by deliberately closing his eyes to the obvious risk that he is engaging in unlawful conduct." United States v. Gullett, 713 F.2d 1203, 1212 (6th Cir.1983) cert. denied, 464 U.S. 1069 (1984). Such an instruction is warranted only when evidence shows "the defendant consciously attempted to escape confirmation of conditions or events he strongly suspected to exist." United States v. Lara-Velasquez, 919 F.2d 946, 951 (5th Cir.1990). The instruction should be used with caution, however, because of the possibility that "juries will convict on a basis akin to a standard of negligence: that the defendant should have known that the conduct was illegal." United States v. Rivera, 926 F.2d 1564, 1571 (11th Cir.1991). The deliberate ignorance instruction is "rarely appropriate, however, because it is a rare occasion when the prosecution can present evidence that the defendant deliberately avoided knowledge." de Francisco-Lopez, 939 F.2d at 1409. Thus, we limit the instruction to situations where the evidence shows that:
 
 
 29
 (1) the defendant was subjectively aware of a high probability of the existence of the illegal conduct; and (2) the defendant purposely contrived to avoid learning of the illegal conduct.
 
 
 30
 Lara-Velasquez, 919 F.2d at 951.
 
 
 31
 The deliberate ignorance instruction should not be used where the evidence points to "either actual knowledge or no knowledge at all of the facts in question." United States v. Sanchez-Robles, 927 F.2d 1070, 1074 (9th Cir.1991) (quoting United States v. Perez-Padilla, 846 F.2d 1182, 1183 (9th Cir.1976)). The instruction is proper only where:
 
 
 32
 ... sufficient independent evidence of deliberate avoidance of knowledge has been admitted ... [T]he same fact or facts cannot be used to prove both actual knowledge and deliberate indifference because the two are mutually exclusive concepts. If evidence proves the defendant actually knew an operant fact, the same evidence could not also prove he was ignorant of that fact. Logic simply defies that result.
 
 
 33
 de Francisco-Lopez, 939 F.2d at 1410.
 
 
 34
 Here, the government argues Ramos had actual knowledge of the drugs and attempted to avoid detection by officers and police dogs, because of the:
 
 
 35
 (1) pervasive smell of air freshener;
 
 
 36
 (2) open can of sardines in the trunk;
 
 
 37
 (3) cocaine in a concealed compartment.
 
 
 38
 The government, however, used these same facts to show Ramos deliberately ignored the presence of cocaine, and failed to present any independent evidence of deliberate avoidance. We therefore find insufficient independent evidence establishing Ramos deliberately avoided learning about the cocaine in the car.
 
 
 39
 2. The Deliberate Ignorance Instruction was Harmless Error
 
 
 40
 We next address whether the improper deliberate ignorance instruction, based upon insufficient independent evidence, was harmless error. Harmless error exists where the district court's deliberate ignorance instruction clearly states the proper legal standards for the jury to apply, and by its own terms does not apply because there exists insufficient evidence to prove deliberate ignorance beyond a reasonable doubt. See United States v. Stone, 9 F.3d 934, 941-42 (11th Cir.1993).[1]
 
 
 41
 Here, the district court instructed the jury:
 
 
 42
 ... [T]o find [deliberate ignorance], you must be convinced beyond a reasonable doubt that the defendant was aware of a high probability that cocaine was in the vehicle he was driving, and that the defendant deliberately closed his eyes to what was obvious. Carelessness, or negligence, or foolishness on his part is not the same as knowledge and is not enough to convict.
 
 
 43
 (JA p. 283).
 
 
 44
 Comparing the district court's instruction to the legal definition of deliberate ignorance, we find the court accurately stated the appropriate legal standard for the jury to apply. The district court's instruction, by its own terms, does not allow the application of deliberate ignorance absent sufficient evidence beyond a reasonable doubt, and ensures proper application by distinguishing deliberate ignorance from "carelessness, or negligence, or foolishness."
 
 
 45
 Because the district court's instruction, by its own terms, did not apply in this situation, we find that the instructions were "surplusage [which did] not create the risk of prejudice." United States v. Cartwright, 6 F.3d 294, 301 (5th Cir.1993) (quoting United States v. Samuel, No. 92-2179, slip op. at 10-11 [980 F.2d 1443 (Table) ] (5th Cir.1992) (unpublished)).
 
 III.
 
 46
 For the foregoing reasons, we AFFIRM the jury verdict presided over by the Honorable Jon P. McCalla, United States District Judge for the Western District of Tennessee.
 
 
 47
 SUHRHEINRICH, Circuit Judge, concurring in the result.
 
 
 48
 I agree with the result reached in this case; however, I write separately to emphasize that the government presented sufficient evidence to show that defendant had actual knowledge that he was carrying cocaine.
 
 
 49
 Defendant claimed he put the sardines in the trunk and planned to eat them later. Although defendant stopped en route to eat, he never retrieved the sardines. Despite defendant's explanation that he forgot about the sardines, the jury convicted him. Apparently, the jury believed that defendant placed the sardines in the trunk to prevent detection of the cocaine. His actions were consistent with actual knowledge.
 
 
 50
 Defendant also testified that he noticed nothing unusual about the trunk. Officer Dollahite testified that he only discovered the secret compartment because, given his training and experience, the small size of the trunk and the open can of sardines raised his suspicion that defendant might be involved in illegal activity. The trunk alteration, particularly when combined with the open can of sardines and the pervasive smell of air freshener, indicated, albeit circumstantially, that Ramos had actual knowledge that he was carrying drugs. Accordingly, the evidence supports the jury's determination that despite defendant's profession of ignorance, he knew drugs were hidden in the car.
 
 
 
 [1]
 Error may also be harmless where the evidence of actual knowledge is "so overwhelming as to compel a guilty verdict." United States v. Rivera, 944 F.2d 1563, 1572-73 (11th Cir.1991). Additionally, a deliberate ignorance instruction may constitute harmless error where no evidence of conscious ignorance exists. United States v. Cartwright, 6 F.3d 294, 301 (5th Cir.1993)