NOT FOR PUBLICATION
File Name: 08a0091n.06
Filed: February 1, 2008

Nos. 06-6441; 06-6476

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

                              ON APPEAL FROM THE
v.                           UNITED STATES DISTRICT
                              COURT FOR THE WESTERN
CURTIS SPRINGER,           DISTRICT OF TENNESSEE

      Defendant-Appellee.

_____/

BEFORE:    SUHRHEINRICH and ROGERS; Circuit Judges, and BELL, District Judge[*].

       **PER CURIAM**. Defendant Curtis Springer appeals following his convictions for attempt to possess and distribute oxycontin, a Schedule II narcotic controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and for conspiracy and attempt to possess with intent to distribute more than 5 grams of cocaine base, also in violation of § 846. We AFFIRM.

**I.**

       Defendant Springer is a former deputy jailer at the Shelby County Jail, in Memphis Tennessee. In early 2004, Special Agent Adam Klein of the Federal Bureau of Investigation and Detective Russ Tilton of the Memphis Police Department began investigating drug problems at the Shelby County Jail. Klein and Tipton contacted FBI informant Charles Pratt, who at the time had a stepson, Frederick Milam, in the jail on first degree murder charges. Milam agreed to help in the

_____

[*]The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan sitting by designation.

investigation. Milam's role was to recruit deputy jailers who were willing to bring drugs into the jail and to give them Pratt's number. After receiving a call from a deputy jailer, Pratt would schedule a pick-up. Prior to meeting with the deputy jailer, Pratt would meet with the agents, who would search his person and vehicle, and give him the money, the drugs, and recording equipment. The fake drugs were packaged in red ziploc bags wrapped in clear tape. The drugs and the interior of the base were marked and numbered with red fluorescent dye. Pratt wore the recording device in a hat.

After the deputy jailer delivered the drugs to Milam, he would call Klein to say he needed an attorney visit. Milam would then give Klein or Tilton the delivered package and the name of the deputy jailer who delivered it. As a result, several deputy jailers were indicted.

On December 14, 2004, Ariane Grant and Tammy Lewis, Springer's codefendants, received eleven grams of fake crack cocaine and $1,000 from Pratt, to be delivered to Milam. On December 16, 2004, an agent recovered this package from Milam. Milam told the agent that he had received the package from Defendant Springer. Milam testified that Springer brought him packages on three different occasions in return for money from Milam. Springer also gave Milam his phone number, which Milam in turn gave to Klein.

On two subsequent occasions, Springer received money and fake oxycontin tablets from Pratt, which Springer then delivered to Milam. Klein made recordings of these two deliveries, and he personally observed Springer meet with Pratt to pick up the packages. The first of these deliveries to Springer occurred on February 1, 2005, and the second on February 7, 2005. At both, Springer received 25 fake oxycontin pills and $1,000. Klein later recovered these packages from Milam, who indicated that he had received them from Springer.

-2-

Pratt confirmed Klein's and Milam's version of events. Specifically, Pratt testified that he gave both fake crack cocaine and fake oxycontin pills to codefendant Lewis and to Springer.

On March 8, 2005, two one-count indictments were returned, one charging Springer with attempting to possess and distribute approximately 50 dosage units of oxycontin, a schedule II narcotic controlled substance, in violation of 21 U.S.C. § 846; the other charging Springer along with codefendants Ariane Grant and Tammy Lewis with conspiracy and attempt to possess with intent to distribute more than 5 grams of a substance containing cocaine base, in violation of 21 U.S.C. § 846. On March 6, 2006, Springer was tried and found guilty as to the charges in both indictments. On November 3, 2006, Springer was sentenced to 85 months' imprisonment with a four-year term of supervised release as to each indictment, to run concurrently with each other. This timely appeal followed.

## II.

Springer makes two basic arguments on appeal. First, he argues that the evidence was insufficient to convict him of conspiracy and attempt with intent to distribute oxycontin. Second, he contends that the trial court instruction on willful blindness was improper. Neither has merit.

## A.

Springer claims that there was no evidence introduced at trial to show that he believed the pills were oxycontin. This Court assesses the evidence in the light most favorable to the government and determines whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The denial of a motion for judgment of acquittal is reviewed de novo. *United States v. Talley*, 194 F.3d 758, 764 (6th Cir. 1999).

In order to convict an individual of conspiracy under § 846, the government must prove that a conspiracy to violate drug laws existed, the defendant knew of the conspiracy, and he knowingly and intelligently participated in the conspiracy. *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001). A defendant's participation in a conspiracy may be inferred from circumstantial evidence. *See United States v. White*, 932 F.2d 588, 590 (6th Cir. 1991) (stating that "circumstantial evidence may support a guilty verdict, even if the circumstantial evidence is inconclusive").

To be guilty of attempt to commit a drug offense, the government must prove that the defendant (1) had intent to engage in the criminal activity, and (2) committed an overt act which constitutes a substantial step toward the commission of that crime. *United States v. Pennyman*, 889 F.2d 104, 106 (6th Cir. 1989). Given the difficulty of proving intent in an attempt case, this Court requires that the substantial step consist of objective acts that mark the defendant's conduct as criminal in nature. *Id.* The test is whether "the defendant's objective conduct, taken as a whole, must unequivocally corroborate the subjective intent to purchase or sell actual narcotics." *United States v. Pennell*, 737 F.2d 521, 525 (6th Cir. 1984). Further, this Court has specifically held that a defendant's subjective belief that sham drugs are real drugs during the course of the attempt is immaterial. *Id.* at 525. *See also Pennyman*, 889 F.2d at 106-07 (applying *Pennell*).

The evidence easily meets this standard. The evidence reflects, and Springer does not dispute, that he received $1,000 on two different occasions, to deliver pills packaged in translucent packaging to a prisoner in the Shelby County Jail. Further, it is also undisputed that on another occasion Springer in fact delivered a package of something that appeared to be crack cocaine to the prisoner. And it is undisputed that Springer received training prior to these deliveries to help him

recognize controlled substances as those substances might be received by prisoners in the jail. In short, Springer's claim is without merit.

Springer also claims that his conviction cannot stand because it is based principally on Milam's testimony, which has little probative value given Milam's lack of credibility. This argument must be rejected because it improperly asks us to weigh the credibility of the witnesses. *United States v. Henley*, 360 F.3d 509, 513 (6th Cir. 2004). In any event, as noted above, there was undisputed testimony from Klein to support Springer's conviction.

**B.**

Springer also argues that the trial court improperly instructed the jury on "willful blindness." The general test is whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury. *United States v. Martin*, 740 F.2d, 1352, 1361 (6th Cir. 1984). However, because he failed to object below, we review under a plain error standard. *United States v. DeJohn*, 368 F.3d 533, 540 (6th Cir. 2004).

A deliberate ignorance instruction is proper where the evidence shows the defendant attempted to escape conviction "by deliberately closing his eyes to the obvious risk that he is engaging in unlawful conduct." *United States v. Gullett*, 713 F.2d 1203, 1212 (6th Cir. 1983). Such an instruction should be used with caution to avoid the possibility that the jury convict on the lesser standard that the defendant *should* have known his conduct was illegal. *United States v. Ramos*, 38 F.3d 1217, at *3 (6th Cir. 1994) (unpublished per curiam) (citing *United States v. Rivera*, 926 F.2d 1564, 1571 (11th Cir. 1991)). Thus, the instruction should only be given if the evidence shows that the defendant was subjectively aware of a high probability of the existence of illegal conduct, and

he purposely contrived to avoid learning of the illegal conduct. *Id.* at *4 (citing *United States v. Lara-Velasquez*, 919 F.2d 946, 951 (5th Cir. 1990)).

In his appeal brief, Springer argues that the instruction was improper because the government failed to introduce "sufficient independent evidence of deliberate avoidance of knowledge," (Defendant's Br. at 15), and argued during closing that Springer had actual knowledge that the pills given to him were contraband. This argument is a bit hard to swallow, since Springer's argument is that "there was no evidence introduced at trial to show that [he] believed that the pills that he was given during the course of the investigation were Oxycontin." Furthermore, we wholeheartledly agree with the government that "considering the duties and responsibilities of a deputy jailer, . . . the mere bringing in of the packages, without inquiring as to the nature of the contents, especially considering the suspicious appearances of the packages, and considering that the defendant received $1,000.00 on two occasions to deliver these packages, constituted the very activity which is dealt with by the willful blindness instruction." (Govt's Br. at 15.) In any event, there was certainly no plain error affecting Springer's substantial rights. *See* Fed. R. Civ. P. 52(b); *Johnson v. United States*, 520 U.S. 461, 466-67 (1997); *United States v. Olano*, 507 U.S. 725, 732 (1993).

**III.**

For the foregoing reasons, the judgment of district court is AFFIRMED.