REVISED OCTOBER 12, 2007

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 23, 2007

Charles R. Fulbruge III
Clerk

_____

No. 05-20574
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JAMES Q. NGUYEN; THOMAS Q. NGUYEN

Defendants-Appellants

_____

Appeal from the United States District
Court for the Southern District of Texas
Case Nos. H-03-CR-078-01 & 02

_____

Before SMITH, BENAVIDES, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

This consolidated appeal presents four issues before this court. Both appellants, Thomas and James Nguyen, argue that (1) the district court erred in issuing a deliberate ignorance instruction; (2) the district court erred in failing

1

to instruct the jury as to the legal duties of title company closing agents and the legal definition of closing transactions; and (3) there is insufficient evidence to establish the element of specific intent for their convictions. Thomas Nguyen additionally argues that (4) the district court abused its discretion by failing to sever his joint trial with his twin brother James Nguyen.

We AFFIRM the district court judgment, because sufficient evidence establishes Thomas and James Nguyen's deliberate ignorance and continued facilitation of an ongoing bank fraud and money laundering conspiracy. The denial of the defendants' proposed instruction regarding legal duties of closing agents did not impact their defense and is not reversible error. Finally, Thomas Nguyen presents insufficient support for his argument that a severed trial was necessary.

## I.

Twin brothers James and Thomas Nguyen worked at the American Title Company. They acted as the notary, escrow, and closing agents for several real estate transactions initiated by Frank Mei and his family in their residential real estate mortgage scheme. The Mei family and their associates have already been subject to numerous prosecutions in the district court for the Southern District of Texas resulting in several trials and guilty pleas. Details of the Meis'

complicated residential scheme are found in United States v. Moncrief, 133 F. App'x. 924, 926-29 (5th Cir. 2004) (per curiam) (unpublished).

Basically, the Meis would create two simultaneous real estate transactions on a single property. First, through a "straw borrower," the Meis would apply for a loan on the straw borrower's behalf to ostensibly finance the sham purchase of a home the Meis "owned" according to their doctored title documents. In other words, the Meis would "sell" a house they did not actually own to their hired straw borrower, so the Meis would be able to obtain a home financing loan without owning the actual house. Using cooperating appraisers, the home would be appraised at a value much greater than the actual value, thereby raising the loan amount. In order to obtain the inflated loans, the Meis would provide the lender false inflated house appraisals, false title commitments, and false information on the straw borrower's loan application to boost the borrower's creditworthiness.

With the inflated loan funds in hand, the Meis would then use those funds to purchase the house at its actual lower value. They used the proceeds from their fraudulent loan transaction to finance their purchase. They then kept the difference between the loan amount based on a false inflated house value and the actual purchase amount. The first transaction involving the sham sale and

3

falsified application for the inflated loan is referred to as the "loan transaction." The second transaction involving the use of loan proceeds to actually purchase the home is referred to as the "cash transaction."

The Nguyens had a circumscribed, but significant, role in this scheme. They acted as escrow, or closing, agents for numerous Mei cash and loan transactions. As their closing agents, they participated in several aspects of the Meis' scheme. The Nguyens would notarize, fill out, and submit forms to the loan companies regarding the sham sale. They notarized the straw borrowers' false affidavits stating the borrowers' intent to occupy the house as their primary residence. These statements enhanced the straw borrowers' loan applications. They filled out cashier check numbers on forms indicating that a down payment was provided even though they never saw the actual check nor inquired about the actual check before the loan transaction forms were submitted. They also signed and certified the validity of the HUD-1 or settlement statement, which described how the funds were allocated showing the borrower, seller, purchase price, loan amount, and down payment. A HUD-1 statement was prepared for both the cash and loan transactions. After the submission of these forms to the loan company and after receiving the loans, the Nguyens would then release the loan amounts to the Meis, usually on the same

4

day. The Meis' associates would then run to a local bank with the loan funds and use those funds to cut the down payment cashier's check described in the loan application and a check for the real purchase of the home. The Nguyens would then submit these checks to complete the transactions. This process was repeated numerous times within a short time period, often with several repeat straw borrowers.

The Nguyens were charged and convicted by a jury on nineteen counts. Count One pertained to participation in an unlawful conspiracy in violation of 18 U.S.C. §§ 371 and 1956(h). Counts Two through Four pertained to bank fraud in violation of 18 U.S.C. §§ 2 and 1344. Counts Five through Nine pertained to engagement in various monetary transactions with criminally-derived property in violation of 18 U.S.C. §§ 2 and 1957(a). Counts Ten Through Nineteen pertained to money laundering in violation of 18 U.S.C. §§ 2 and 1956(a)(1)(A)(I). James Nguyen was sentenced to 97 months' imprisonment, and Thomas Nguyen was sentenced to 63 months' imprisonment. Thomas was ordered to pay $1,092,473.22 in restitution and James was ordered to pay $1,152,473.22 in restitution.

II.

Appellants' first contention is that the district court erred by using a

"deliberate ignorance" instruction. A deliberate ignorance instruction is designed "to inform the jury that it may consider evidence of the defendant's charade of ignorance as circumstantial proof of guilty knowledge." United States v. Lara-Velasquez, 919 F.2d 946, 951 (5th Cir. 1990). "It is only to be given when a defendant claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate indifference." United States v. Threadgill, 172 F.3d 357, 368 (5th Cir. 1999) (citing United States v. Wisenbaker, 14 F.3d 1022, 1027 (5th Cir. 1994)). In this case, knowledge is an element of each count. For their conspiracy counts, the Government must prove the defendants knew of the conspiracy's unlawful objective. United States v. Dadi, 235 F.3d 945, 950 (5th Cir. 2000) (citing 18 U.S.C. § 371). For their bank fraud offenses, the Government must prove the defendants "knowingly executed" a scheme that defrauded a financial institution "by means of false or fraudulent pretenses, representations or promises." United States v. McCauley, 253 F.3d 815, 819 (5th Cir. 2001) (citing 18 U.S.C. § 1344). For their monetary transactions with criminally derived property, the Government must prove the defendants knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, which was derived from a specified unlawful activity. 18 U.S.C. § 1957(a). For money laundering, the Government must

prove the defendants conducted a financial transaction knowing that it involved the proceeds of a specified unlawful activity with the intent to promote or further unlawful activity. United States v. Cavalier, 17 F.3d 90, 92 (5th Cir. 1994) (quoting United States v. Ramirez, 954 F.2d 1035, 1039 (5th Cir. 1992)). See also 18 U.S.C. § 1956(a)(1)(A)(i).[1]

The deliberate ignorance charge given to the jury in this case was as follows:

> The word "knowingly," as that term is used from time to time in these instructions means that the act was done voluntarily and intentionally, not because of mistake or accident. You may find that a defendant had knowledge of a fact if you find that the government has proven beyond a reasonable doubt that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. Such knowledge on the part of the defendant cannot be established by demonstrating that the defendant was negligent, careless, or foolish. Knowledge can be inferred if the government's proof shows beyond a reasonable doubt that the defendant deliberately blinded himself to the existence of a fact. But if the proof shows that a defendant actually believed that the transactions were legitimate sales and mortgage loans, then you must acquit the defendant.

Both appellants raise two objections to this deliberate ignorance charge: (1)

---

[1] The Fifth Circuit has approved the deliberate ignorance instruction in cases involving the offenses in this case: conspiracy, see United States v. Soto-Silva, 129 F.3d 340, 345 (5th Cir. 1997); bank fraud, see United States v. Scott, 159 F.3d 916, 924 (5th Cir. 1998); and money laundering, see United States v. Fuller, 974 F.2d 1474, 1482 (5th Cir. 1992).

whether there was a factual basis for using a deliberate ignorance charge and (2) whether the insertion of the underlined last sentence into the jury instruction improperly shifted the burden of proof onto the defendants.[2]

## 1. The Factual Basis For A Deliberate Ignorance Instruction Exists

While a "deliberate ignorance" instruction should rarely be given, Threadgill, 172 F.3d at 368, a deliberate ignorance instruction is justified where "the evidence shows (1) subjective awareness of a high probability of the existence of illegal conduct and (2) purposeful contrivance to avoid learning of the illegal conduct." Id. (citation omitted); see United States v. Bieganowski, 313 F.3d 264, 289-91 (5th Cir. 2002).

As the appellants challenged the use of the deliberate ignorance standard below, we now review the decision to use the deliberate ignorance instruction under an abuse of discretion standard. United States v. Fuchs, 467 F.3d 889, 902 (5th Cir.), cert denied, 127 S. Ct. 1502 (2007). In reviewing whether an instruction was supported by the evidence, "we view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the Government. Any error is subject to harmless error review."

---

[2] The rest of the charge accords with the FIFTH CIRCUIT PATTERN JURY INSTRUCTION: CRIMINAL § 1.37 (2001) and precedent. See United States v. Brown, 186 F.3d 661, 665 (5th Cir. 1999); United States v. Reveles, 190 F.3d 678, 686 & n.12 (5th Cir. 1999).

United States v. Mendoza-Medina, 346 F.3d 121, 132 (5th Cir. 2003); see United States v. Sharpe, 193 F.3d 852, 871 (5th Cir. 1999). Under this standard of review, we believe there is sufficient evidence to satisfy the two prong test described above, thereby justifying a deliberate ignorance instruction in this case.

A. "The subjective awareness of a high probability of the existence of illegal conduct"

"[T]he first prong permits a deliberate ignorance instruction only when the Government presents facts that support an inference that the particular defendant subjectively knew his act to be illegal and not when the Government presents facts that tend to support an inference that a reasonable person would have known the act to be illegal." Lara-Velasquez, 919 F.2d at 952 (emphasis in original). The evidence should allow a "glimpse" into the defendants' minds when there is no evidence pointing to actual knowledge. Id. at 953 & n.8. Suspicious and erratic behavior may be sufficient to infer subjective awareness of illegal conduct. See United States v. Casilla, 20 F.3d 600, 603 (5th Cir. 1994); United States v. Saucedo-Munoz, 307 F.3d 344, 348 (5th Cir. 2002).

The Government presented sufficient evidence of appellants' suspicious behavior to infer subjective knowledge. The Nguyens facilitated a pattern of real

estate transactions involving repeat buyers within a short period of time. They witnessed and notarized repeat buyers suspiciously signing documents saying they were planning to purchase a home for their primary residence within a short period of time. The Nguyens notarized, certified, and helped submit the settlement agreements for these transactions.

While the factual pattern justifying a deliberate ignorance instruction is fairly case-specific, the Nguyens' activities can be arguably analogized to the defendant in United States v. Freeman, 434 F.3d 369 (5th Cir. 2005), where this court inferred subjective awareness of illegal activity. In Freeman, the defendant typed and witnessed investment agreements that promised exorbitant amounts to investors. Id. at 378. He wired investors' money into investment accounts. Id. He then wrote checks from these accounts for payments unrelated to the investment agreement, and created financial statements showing his superior's use of these accounts to fund personal expenses and payments to other unrelated investors. Id. He completed these tasks with the knowledge that other investors had accused his superior of fraud and his superior was under investigation by the FBI. Id. Similar to the Freeman case, the Nguyens facilitated the use of entrusted funds in contravention of the purpose for which the funds were provided, a purpose they knew as a result of witnessing and

participating in the funds' contractual genesis. The Nguyens released the loan funds to the Meis' runners and told them the amounts needed for two cashier checks; the two checks were (1) the down payment for purchasing the home the Nguyens already helped fraudulently "sell" and (2) the down payment for the loan disbursed from that sham sale. In essence, while disbursing the loan funds, they provided the amount needed for a down payment check that had been initially required for the loan application. Similar to Freeman, the Nguyens witnessed the suspicious solicitation of funds and understood the funds' ostensible purpose, but yet repeatedly facilitated a use of those funds in a highly suspicious manner contravening that purpose. Compare Id.; cf. United States v. Faulkner, 17 F.3d 745, 767 (5th Cir. 1994) (finding as suspicious, "(11) even when properties were bought and sold in rapid succession, sometimes on the same day, the appraisals were always high enough to support the loans, (12) buyers would not put up any cash for a down payment, and typically walked away from the closing with cash in their pockets and a loan large enough to pay all closing costs and future interest payments for some period of time, (13) sales of properties by Faulkner and Toler never fell through due to lender concern about the creditworthiness of a straw buyer or the value of the property pledged as collateral").

While participation in a single suspicious transaction described above may arguably be insufficient to warrant a deliberate ignorance instruction, the routine and repeated pattern of suspicious transactions in this case is sufficiently suspicious to infer the Nguyens' subjective awareness of illegal activity. Compare Reveles, 190 F.3d at 689 ("If the government had presented evidence that [the defendant] participated in a substantial number of the forty-two shipments, a jury might infer that this fact increased the likelihood of [the defendant]'s knowledge that drugs were involved."); Id. at 693 (Garza, J., concurring in part and dissenting in part) ("Thus, a juror could reasonably infer from the testimony that [the defendant] performed the suspicious delivery routine on a regular basis. [The defendant's] participation in a large number of deliveries involving multiple vehicles also supports the conclusion that [the defendant] had knowledge of the nature of the deliveries."). Testimony from straw borrowers confirms the routine and repeated nature of these suspicious transactions. Straw borrower John Garcia testified that he engaged in four transactions over a period of just six days, including two transactions in one day. He signed affidavits that he was going to occupy the purchased home in each of those transactions and never brought a down payment check. Similarly, Jonathan McIntosh participated as a straw borrower in four transactions over

a period of just ten days. In addition to these transactions, Garcia, McIntosh and other straw borrowers participated in other transactions throughout the March through August 1999 period with multiple transactions every month.[3] Adding to the suspicious nature of these transactions, James Nguyen also notarized and witnessed suspicious signatures. There is some evidence that James Nguyen processed paperwork with falsified signatures from repeat buyers who he had previously met and for whom he had notarized documents.

In light of their continued participation in this suspicious conduct,[4] we find no abuse of discretion in the district court's inference of a subjective awareness of illegal activity suitable for a deliberate ignorance instruction.

B. "Purposeful contrivance to avoid learning of the illegal conduct."

If "[t]he circumstances in this case were so overwhelmingly suspicious that the defendants' failure to conduct further inspection or inquiry suggests a

---

[3] James Long, Frank Mei's cousin and a co-conspirator, testified that up to five transactions per straw borrower had to be accomplished as quickly as possible so as to complete transactions before they show up on the straw borrowers' credit report.

[4] While the evidence for both defendants is sufficient to warrant a "deliberate ignorance" instruction, the evidence in James Nguyen's case is stronger. The Nguyens' secretary recounted a suspicious incident involving James Nguyen. James Nguyen became quite angry when a HUD-1 settlement statement for the cash transaction was accidently sent first to a lender. From this incident, one could infer that James Nguyen was aware that the timing of the cash and loan transactions contravened usual closings procedures and the HUD-1 settlement statement, if sent at the wrong time, would contain information that may raise suspicions about improper or illegal activities.

13

conscious effort to avoid incriminating knowledge," United States v. Daniel, 957 F.2d 162, 169-70 (5th Cir. 1992), then this second prong can be satisfied. See also United States v. Ricardo, 472 F.3d 277, 286 (5th Cir.), cert. denied, 127 S. Ct. 2076 (2007) ("[T]heir failure to conduct further inspection or inquiry suggests a conscious effort to avoid incriminating knowledge."); Freeman, 434 F.3d at 378 & n.8. Circumstantial evidence can be provided as evidence of purposeful contrivance. See United States v. Investment Enterprises, Inc., 10 F.3d 263, 269 n.9 (5th Cir. 1993).

Testimony established that both Nguyens requested photocopies or numbers of down payment cashier's checks to send to the lenders, but never requested to examine the actual checks themselves in these multiple repeat transactions. The repeated failure to inquire is sufficient basis for an inference that they suspected or actually knew, but avoided further knowledge, about the non-existence of the down payment checks before loans were disbursed. The Nguyens never inquired about the relationship between the loans and the down payment. Not asking questions can be considered a purposeful contrivance to avoid guilty knowledge. See Daniel, 957 F.2d at 169-70. In accordance with the Meis' instructions, the Nguyens also directed calls from lenders about title commitments, which the Meis falsified, to the Meis instead of ever responding

to the calls. One can infer that the Nguyens avoided direct knowledge of the problems with the transaction by routing to the Meis the lenders' calls, and never inquiring about the suspicious instruction to avoid such calls.

If the facts only included a single suspicious incident, the failure to inquire could arguably be considered mere negligence, and would thus be unsuitable for a "deliberate ignorance" instruction. Cf. Lara-Velasquez, 919 F.2d at 951. However, the repeated and routine nature of the transactions with the same buyers without down payments and the same runners is overwhelmingly suspicious. See Daniel, 957 F.2d at 169-70. See also Lara-Velasquez, at 951 ("[D]eliberate ignorance is reflected in a criminal defendant's actions which suggest, in effect, 'Don't tell me, I don't want to know.'") (quoting United States v. de Luna, 815 F.2d 301, 302 (5th Cir. 1987)). The sheer intensity and repetition in the pattern of suspicious activity coupled with the Nguyens' consistent failure to conduct further inquiry create a reasonable inference of purposeful contrivance that satisfies this second prong. Since both prongs are satisfied for both defendants, the district court's use of a deliberate ignorance instruction is not an abuse of discretion.

2. The additional last sentence in the charge

The Nguyens also argue that the last sentence in the charge impermissibly

shifted the burden of proof to the defendants. This court approved an almost identical instruction in at least two prior cases. See Saucedo-Munoz, 307 F.3d at 347-48 & n. 1 ("However, even so, if you find that the Defendant actually believed that the transaction did not involve marihuana or cocaine, then you must acquit the defendant."). See also United States v. Farfan-Carreon, 935 F.2d 678, 681 & n.5 (5th Cir. 1991). The last sentence in the charge in this case and the similar sentence in the Saucedo-Munoz charge are both correct statements of the law. A conviction under deliberate ignorance can not be based on carelessness, negligence, or lack of actual knowledge of illegal activity. This court approvingly noted in Saucedo-Munoz that the part of the instruction similar to the sentence under consideration in this case "provided a safeguard by instructing the jury that it could not find him guilty if it believed he was merely careless or negligent or did not realize that the underlying transaction involved narcotics." Id. at 349 (emphasis added). Similarly, the charge in this case instructed the jury to find the Nguyens not guilty if they did not realize that the underlying transaction was illegitimate.

"An error in a jury instruction is subject to harmless error review." United States v. Ibarra-Zelaya, 465 F.3d 596, 607 (5th Cir. 2006). There is a minor, and ultimately harmless, difference between the charges in Saucedo-Munoz and in

16

this case. In Saucedo-Munoz, the charge is phrased with a negative finding: "if you find that the Defendant actually believed that the transaction <u>did not</u> involve marihuana or cocaine". 307 F.3d at 347 n. 1 (emphasis added). Here the charge is phrased with a positive finding: "if the proof shows that the defendants actually believed that the transactions <u>were</u> legitimate sales and mortgage loans."

Under a harmless error standard, the differences here appear inconsequential and harmless. The minor difference does not on its face plausibly show nor does the appellant provide any argument as to how this difference may implicate a reversible error. A charge very similar to the charge given in this case was approved in Saucedo-Munoz, and, therefore, there is no reversible error here.

III.

The appellants also challenge the trial court's decision to deny the appellants' proposed jury instructions concerning the legal definition of closing agents and the closing transactions.

The appellees assert that the appellants abandoned their objections to the trial court's denial of the appellants' proposed instructions. See In re Wynne, 207 F. App'x 472, 475-76 (5th Cir. 2006) (describing standards for abandonment)

(unpublished). The evidence in the record is not clear, and we need not decide this issue, since the trial court did not abuse its discretion in denying their proposed instructions as we explain below.

This court reviews a district court's refusal to include a defendant's proposed jury instruction in the charge under an abuse of discretion standard. United States v. Rochester, 898 F.2d 971, 978 (5th Cir. 1990). The district court abuses its discretion by refusing to include a requested instruction only if that instruction: (1) is substantively correct; (2) is not substantially covered in the charge given to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impairs the defendant's ability to present effectively a particular defense. United States v. St. Gelais, 952 F.2d 90, 93 (5th Cir. 1992).

The issue in this case is whether the proposed charge concerns an important point in the trial so that a failure to instruct with these proposed instructions seriously impaired a particular defense. The appellants argue that these legal definitions help establish the Nguyens' belief that they proceeded in their duties in compliance with what the law requires and in executing duties in compliance with the law they had no basis to suspect the underlying transactions as illegal. In United States v. Chaney, we rejected a similar argument, because

18

this "good faith"-type defense was adequately covered by the usual pattern "knowingly" instruction. 964 F.2d 437, 444-46 (5th Cir. 1992). The same principle would apply here as the "knowingly" instruction and the defense's presentation sufficiently informed the jury regarding the substance of the proposed charge in relation to appellants' defense, i.e., if the Nguyens believed they were participating in a legitimate transaction, the jury had to acquit. Compare Id. at 445-46. Michelle Sprinkle, a defense witness, covered the defense's view of how the legal duties could have informed the defendants' knowledge and beliefs about the illegality of the transactions. Compare Id. The district court, thus, did not err in denying the appellants' proposed instruction.

"[E]ven if the jury instructions were erroneous, we will not reverse if we determine, based on the entire record, that the challenged instruction could not have affected the outcome of the case." Johnson v. Sawyer, 120 F.3d 1307, 1315 (5th Cir. 1997). As the trial judge notes, the thrust of the proposed instruction was already covered at trial. Direct and cross-examination of testimony by Michelle Sprinkle, Joyce Poindexter, and Elaine Keto covered much of the substance of the proposed instruction at length. All three are experienced members of the real estate business familiar with the transactions in question. Any difference between the information provided in the testimony and the

proposed instruction would not affect the outcome of the case; the jury was not prevented from considering the legal duties and definitions in reference to the Nguyens' defense.  See United States v. Chenault, 844 F.2d 1124, 1131 (5th Cir. 1988) ("A trial court need not define specific statutory terms unless they are outside the common understanding of a juror or are so technical or specific as to require a definition.").  Even if the trial court erred in denying the proposed instruction, the error is harmless.

IV.

The appellants also question the sufficiency of evidence for the "specific intent" element in the counts relating to bank fraud, money laundering, and conspiracy.  Challenges to sufficiency of the evidence are reviewed by examining whether, in the light most favorable to the verdict, a rational jury could have found the essential elements of the offense established beyond a reasonable doubt. United States v. Solis, 299 F.3d 420, 445 (5th Cir. 2002).  The government needed to prove that the Nguyens knew of their conduct's possible illegality but also that they specifically intended to commit the illegal acts to further its unlawful purpose.  See United States v. Doke, 171 F.3d 240, 243 (5th Cir. 1999) (fraud); United States v. Wilson, 249 F.3d 366, 377 (5th Cir. 2001)  (money laundering); United States v. Bordelon, 871 F.2d 491, 493-94 (5th Cir. 1989)

20

(conspiracy). Circumstantial evidence can be used to support a finding of specific intent. Dadi, 235 F.3d at 950 (conspiracy); United States v. Hughes, 230 F.3d 815, 821 (5th Cir. 2000) (money laundering); United States v. Ismoila, 100 F.3d 380, 387 (5th Cir. 1996) (fraud).

The evidence for a finding of specific intent can overlap with the evidence establishing the defendant's knowledge that they were acting illegally, i.e. the Nguyens' knowledge that they were facilitating a conspiracy to defraud lenders, that they were defrauding banks through their actions, and that they were facilitating the use of proceeds from illegal activity. The specific intent element of the offense is a slightly more culpable state of mind compared to the knowledge element. United States v. Bailey, 444 U.S. 394, 404-05 (1980). As with the offenses in this case, specific intent is generally associated with actions intended to further a specific illegal purpose. Id. at 405 ("In a general sense, 'purpose' corresponds loosely with the common-law concept of specific intent, while 'knowledge' corresponds loosely with the concept of general intent."). In a previous section, sufficient evidence supported a charge of deliberate ignorance satisfying the "knowledge" element in these convictions. See supra Section II.1. The evidence supporting the jury's finding of "deliberate ignorance" (for the knowledge element) can also support a finding of "specific intent" in this case. See

Brown, 186 F.3d at 665 & n.5. The Nguyens' participation in these repeated transactions indicate deliberate ignorance of the underlying illegalities, but also the continued willingness to purposively facilitate the suspicious transactions in an unchanged manner. The Nguyens acted in full awareness that their actions furthered the success of these transactions thereby aiding the repeat participants in their suspicious conduct ("straw borrowers," runners, Mei family members, etc.). Since the jury found the Nguyens deliberately ignorant, and thus, subjectively aware of the high probability of illegalities around them, evidence of their continued facilitation of those highly suspicious transactions may constitute "specific intent" to further an illegal purpose for which they were deliberately ignorant. "To the extent that the [deliberate ignorance] instruction is merely a way of allowing the jury to arrive at the conclusion that the defendant knew the unlawful purpose of the conspiracy, it is hardly inconsistent with a finding that the defendant intended to further the unlawful purpose." Investment Enterprises, Inc., 10 F.3d at 269.

Sufficient evidence, in the light most favorable to the verdict, supports the jury's finding of specific intent for each these counts.

V.

Appellant Thomas Nguyen contends the district court erred in denying his

motion to sever his trial. Since he objected to the denial of his motion below, we review for abuse of discretion. United States v. Clay, 408 F.3d 214, 219 (5th Cir. 2005). As a general rule, defendants indicted together would hold a trial together. United States v. Rocha, 916 F.2d 219, 227-28 (5th Cir. 1990). See also United States. v. Castillo, 77 F.3d 1480, 1490-91 (5th Cir. 1996); Solis, 299 F.3d at 441 & n.47. A district court should grant a severance only if a defendant is able to show that "there is a serious risk that a joint trial would compromise a special trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993).

The mere fact that twins are jointly prosecuted is not sufficient to render a trial unfair per se. United States v. Williams, 809 F.2d 1072, 1084 (5th Cir. 1987). The jury instructions, the testimony by many of the straw borrowers, and the documentary evidence adequately "compartmentalize[d]" the evidence for the two defendants. Id. In fact, the difference in evidence for the two defendants adequately allowed the trial judge to justify different sentences for the two defendants.

According to the appellant, Thomas Nguyen, he was unable to call his co-defendant at trial because of Fifth Amendment protections; if the trial was

severed, Thomas Nguyen would have been able to compel his co-defendant's testimony under the Sixth Amendment. Under these circumstances, severance might be granted to protect the Sixth Amendment right to compulsory process, which is considered a special trial right. United States v. Barnett, 197 F.3d 138, 145 (5th Cir. 1999) ("Nor was severance required so that the testimony of a coconspirator could be compelled without violating the coconspirator's fifth amendment rights."). However, to obtain a severance based on a defendant's desire to call a co-defendant as a witness on his behalf so as to exercise a Sixth Amendment right, the defendant must establish a bona fide need for the testimony, the substance of the desired testimony, the exculpatory effect of the desired testimony, and indication that the co-defendant would indeed testify at a separate trial. United States v. Kane, 887 F.2d 568, 573 (5th Cir. 1989); United States v. Nutall, 180 F.3d 182, 187 (5th Cir. 1999). Under that test, without an affidavit from the co-defendant himself or other similar proof, "conclusory allegation[s]" that a co-defendant would testify and what he or she would testify about is not sufficient. See United States v. Sparks, 2 F.3d 574, 583 & n.10 (5th Cir. 1993) (listing precedent); United States v. Neal, 27 F.3d 1035, 1047 (5th Cir. 1994). Representations by the defendant's attorney are not sufficient. Williams, 809 F.2d at 1084. Thomas Nguyen only provided an affidavit from his attorney

as evidence of his co-defendant's willingness to testify and the substance of his possible testimony. Therefore, the district court did not abuse its discretion to deny severance; Thomas Nguyen did not provide sufficient evidence to establish that his brother would be a witness at his trial apart from his trial attorney's conclusory assertions.

## VI.

For the reasons stated above, we AFFIRM the district court's judgment.