# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-20812

United States Court of Appeals
Fifth Circuit

**FILED**
November 4, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

>Plaintiff - Appellee

v.

FAIZ AHMED,

>Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CR-346-3

Before DAVIS, HO, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

Following a jury trial, Defendant-Appellant, Faiz Ahmed, M.D., was convicted of health care fraud and conspiracy to commit health care fraud. On appeal, he argues the district court committed reversible error by instructing the jury regarding "deliberate ignorance" and by excluding certain testimony as inadmissible hearsay. On plain error review, we AFFIRM.

## BACKGROUND

On July 1, 2015, a federal grand jury sitting in the Southern District of Texas returned a 25-count indictment charging Faiz Ahmed, M.D., along with

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-20812

several other individuals, with various crimes, including conspiracy, health care fraud, violations of the federal Anti-Kickback Statute, and money laundering. A superseding indictment was returned on October 21, 2015, adding charges and defendants. The charges arose from Dr. Ahmed's employment at the Arca Medical Clinic. Specifically, the indictment alleged that Dr. Ahmed and others fraudulently represented to Medicare and Medicaid that certain diagnostic tests "were actually performed and medically necessary."

All of Dr. Ahmed's co-defendants pleaded guilty prior to trial. On January 17, 2017, Dr. Ahmed proceeded to trial on one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349, and seven counts of health care fraud, in violation of 18 U.S.C. § 1347. Dr. Ahmed, testifying in his own defense at trial, did not contest his co-defendants' guilt, but denied any knowledge that the Arca Clinic had submitted false or fraudulent bills to Medicare for his work. On January 25, 2017, the jury found Dr. Ahmed guilty on all eight counts. On November 29, 2018, the district court sentenced Dr. Ahmed to 60 months incarceration on each count, with all terms of incarceration to run concurrently, and ordered him to pay restitution of $4,192,156.22. Dr. Ahmed timely appealed his conviction.

## ANALYSIS

Sections 1347 and 1349 of Title 18 of the United States Code impose criminal penalties for health care fraud and conspiracy to commit health care fraud. *See* 18 U.S.C. § 1347 (health care fraud) and 18 U.S.C. § 1349 (conspiracy). To be guilty of health care fraud, one must:

> (a) "*knowingly and willfully* execute[], or attempt[] to execute, a scheme or artifice—
> (1) to defraud any health care benefit program; or
> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the

No. 18-20812

> money or property owned by, or under the custody
> or control of, any health care benefit program,

> in connection with the delivery of or payment for
> health care benefits, items, or services[.]

18 U.S.C. § 1347 (emphasis added).

Dr. Ahmed maintains his innocence, contending he had no knowledge of his co-defendants' unlawful conduct. Additionally, urging legal error by the district court, he asks this court to overturn his conviction. Specifically, he argues the district court committed reversible (plain) error by including a "deliberate ignorance" instruction in the instructions given to the jury for use in their deliberations and by excluding, as inadmissible hearsay, his testimony regarding statements others made to him that purportedly caused him to believe that his conduct and Arca's operations were lawful.

## I. "Deliberate Ignorance" Jury Instruction

Without objection from Dr. Ahmed's trial counsel, the district court included a "deliberate ignorance" instruction in the instructions given to the jury prior to its deliberations. That instruction told the jury:

> You may find that the defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact.[1]

---

[1] The government included the deliberate ignorance instruction, in brackets, in its proposed instructions. Without discussion, the district court included the bracketed language in its draft instructions. Dr. Ahmed's trial counsel neither objected to the district court's proposed instructions nor proposed instructions on behalf of Dr. Ahmed.

3

No. 18-20812

In reviewing a defendant's claim that a jury instruction was inappropriate, appellate courts consider "whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them." *United States v. Araiza-Jacobo*, 917 F.3d 360, 365–66 (5th Cir. 2019) (internal quotations omitted).  And, of course, "[t]he court may not instruct the jury on a charge that is not supported by evidence." *Id.* at 366.  *See also United States v. St. Junius*, 739 F.3d 193, 204 (5th Cir. 2013) (review of a deliberate ignorance instruction is "a fact-intensive endeavor" based on "the totality of the evidence"); *United States v. Lara-Velasquez*, 919 F.2d 946, 950 (5th Cir. 1990) (deliberate ignorance instruction "not only must be legally accurate, but also factually supportable"). In determining whether the evidence sufficiently supports a particular jury instruction, we "'view[] the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the Government.'" *Araiza-Jacobo*, 917 F.3d at 366 (quoting *United States v. Cessa*, 785 F.3d 165, 185 (5th Cir. 2015)).

"The purpose of the deliberate ignorance instruction is to inform the jury that it may consider evidence of the defendant's charade of ignorance as circumstantial proof of guilty knowledge." *Lara-Velasquez*, 919 F.2d at 951. Thus, it "'is nothing more than a refined circumstantial evidence instruction properly tailored to the facts of a case[.]'" *Id.* (quoting *United States v. Manriquez Arbizo*, 833 F.2d 244, 248 (10th Cir. 1987)).  "As one opinion has colloquially noted, deliberate ignorance is reflected in a criminal defendant's actions which suggest, in effect, 'Don't tell me, I don't want to know.'" *Id.* (quoting *United States v. de Luna*, 815 F.2d 301, 302 (5th Cir. 1987)).

Despite the seemingly common-sense nature of the deliberate ignorance instruction, this court has been tasked with determining the propriety of its usage a number of times in the last several years. These cases reflect that the

instruction's application has not been as straightforward as one might initially expect.  For instance, in *United States v. Oti*, we confirmed that the instruction *may* properly be utilized in a conspiracy case, but also emphasized "again [] that the deliberate ignorance instruction should *rarely* be given." 872 F.3d 678, 697–99 (5th Cir. 2017) (emphasis added), *cert. denied*, 38 S. Ct. 1988 (2018).  The panel additionally explained:

> "We have often cautioned against the use of the deliberate ignorance instruction." [*United States v. Mendoza-Medina*, 346 F.3d 121, 127 (5th Cir. 2003)]. In *United States v. Skilling*, we noted that such an instruction should be given only in "'rare' instance[s]" and observed:
>
>> The concern is that once a jury learns that it can convict a defendant despite evidence of a lack of knowledge, it will be misled into thinking that it can convict based on negligent or reckless ignorance rather than intentional ignorance. In other words, the jury may erroneously apply a lesser *mens rea* requirement: a "should have known" standard of knowledge.
>
> *Skilling*, 554 F.3d 529, 548–49 (5th Cir. 2009), *rev'd on other grounds*, 561 U.S. 358, 130 S. Ct. 2896, 177 L.Ed.2d 619 (2010).
>
> .    .    .
>
> [Accordingly,] "the district court should *not* instruct the jury on deliberate ignorance when the evidence raises *only* the inferences that the defendant had actual knowledge *or* no knowledge at all of the facts in question." *Mendoza-Medina*, 346 F.3d at 133–34.

*Oti*, 872 F.3d at 697–98 (emphasis added). *See also Mendoza-Medina*, 346 F.3d at 133 ("Where 'the choice is simply between a version of the facts in which the defendant had actual knowledge, and one in which he was no more than negligent or stupid, the deliberate ignorance instruction is inappropriate.'") (quoting *Lara-Velasquez*, 919 F.2d at 951)).

Hence, "[t]he proper role of the deliberate ignorance instruction is *not* as a backup or supplement in a case that hinges on a defendant's actual

knowledge." *United States v. Kuhrt*, 788 F.3d 403, 417 (5th Cir. 2015) (emphasis added). Rather, "[t]he instruction is appropriate *only* in the circumstances where a defendant 'claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate indifference.'" *Id.* (quoting *United States v. Brooks*, 681 F.3d 678, 701 (5th Cir. 2012)). That is, the test is two-pronged: a deliberate ignorance instruction is proper "when 'the evidence shows (1) [the defendant's]subjective awareness of a high probability of the existence of illegal conduct, *and* (2) purposeful contrivance to avoid learning of the illegal conduct.'" *Araiza-Jacobo*, 917 F.3d at 366 (emphasis added) (quoting *United States v. Nguyen*, 493 F.3d 613, 619 (5th Cir. 2007)).

Logically, "[t]he first prong often overlaps with an inquiry into a defendant's actual knowledge, because 'the same evidence that will raise an inference that the defendant had actual knowledge of the illegal conduct ordinarily will also raise the inference that the defendant was subjectively aware of a high probability of the existence of illegal conduct.'" *Id.* (quoting *Lara-Velasquez*, 919 F.2d at 952. "'Thus, in many cases, the propriety of a deliberate ignorance instruction depends upon evidence that the defendant purposely contrived to avoid learning of the illegal conduct—the second prong of the deliberate ignorance test.'" *Id.* (emphasis added). *See also Mendoza-Medina*, 346 F.3d at 133 ("The *sine qua non* of deliberate ignorance 'is the *conscious* action of the defendant—the defendant *consciously* attempted to escape confirmation of conditions or events he strongly suspected to exist.'") (quoting *Lara-Velasquez*, 919 F.2d at 951). The second prong may be established by direct or circumstantial evidence, including where "'the circumstances in the case [are] so overwhelmingly suspicious that the defendant's failure to conduct further inspection or inquiry suggests a conscious effort to avoid incriminating knowledge.'" *Nguyen*, 493 F.3d at 621 (quoting *United States v. Daniel*, 957 F.2d 169–70 (5th Cir. 1992)).

A determination that a district court erred in giving a deliberate ignorance instruction, however, does not end our inquiry.  Instead, as in *Araiza-Jacobo* and many other of the cited cases, "the error 'is harmless where there is *substantial* evidence of [the defendant's] *actual* knowledge'" presented at trial. *Araiza-Jacobo*, 917 F.3d at 367–68 (emphasis added) (quoting *Oti*, 872 F.3d at 698).  *See also*, *e.g.*, *Kuhrt*, 788 F.3d at 418; *St. Junius*, 739 F.3d at 204–05; *Mendoza-Medina*, 346 F.3d at 134.  "'Substantial evidence means relevant evidence acceptable to a reasonable mind as adequate to support a conclusion.'" *Araiza-Jacobo*, 917 F.3d at 368 (quoting *Simmons v. United States*, 406 F.2d 456, 464 (5th Cir. 1969)).

In the instant matter, Dr. Ahmed's trial counsel did not object to the deliberate ignorance instruction before the district court.  Accordingly, we employ a plain error standard of review, rather than reviewing the district court's decision to give the instruction for an abuse of discretion.  FED. R. CRIM. P. 52(b).  *See also*, *e.g.*, *United States v. Delgado*, 672 F.3d 320, 340 (5th Cir. 2012) (en banc).  "To demonstrate plain error, the defendant must show that there was error, it was plain, and it affected his or her substantial rights." *United States v. Alaniz*, 726 F.3d 586, 615 (5th Cir. 2013); *see*, *e.g.*, *United States v. Olano*, 507 U.S. 725, 732–37 (1993); *United States v. Aguilar*, 645 F.3d 319, 323 (5th Cir. 2011). An error is "plain" if it is "clear" or "obvious." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016).  A plain error affects a defendant's substantial rights if the defendant "show[s] a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Id*. (internal quotation omitted).  "Even if the defendant can meet this burden, we still would have discretion to decide whether to reverse, which we generally will not do unless the plain error seriously affected the fairness, integrity, or public reputation of the judicial proceeding." *Alaniz*, 726 F.3d at 615 (internal quotation omitted).

7

Here, Dr. Ahmed contends there is no evidence that he "consciously attempted to escape confirmation of conditions or events he strongly suspected to exist" or engaged in a "purposeful contrivance to avoid learning of the illegal conduct." Hence, he argues the district court committed plain error in giving the deliberate ignorance instruction. Additionally, because knowledge was the principal disputed issue in the case, the government emphasized the deliberate ignorance instruction in closing argument, and the evidence of actual knowledge was hotly disputed, Dr. Ahmed maintains that the error affected his substantial rights and requires reversal.

In response, the government urges the court to find the deliberate ignorance instruction appropriate based on the "failure to inquire" rationale approved in *Nguyen* and *Araiza-Jacobo*, *i.e.*, "the circumstances in the case [are] so overwhelmingly suspicious that the defendant's failure to conduct further inspection or inquiry suggests a conscious effort to avoid incriminating knowledge." *Nguyen*, 493 F.3d at 621 (internal quotation omitted). The government's position, however, rests largely upon conclusory assertions and overly generous characterizations of the evidence on which it relies.

Even so, we conclude that the plain error required for reversal has *not* been established here because sufficient evidence exists of Dr. Ahmed's actual awareness of the Medicare fraud occurring at the Arca clinic. While reasonable minds could assess and weigh the largely circumstantial evidence in this matter differently, it is far from apparent that the jury's overall negative assessment of Dr. Ahmed's credibility, relative to his purported lack of knowledge of the illegality of the clinic's billing practices, is erroneous. While Dr. Ahmed's efforts to portray himself as simply a conscientious, honest, and hardworking doctor—whose alleged innocence and misunderstanding of American jargon caused him to unknowingly become

8

part of his co-defendants' fraudulent scheme—are fairly impressive, other evidence of his prior dealings, particularly the video and audio recordings introduced by the government, suggest the contrary very well may be true. At a minimum, the competing evidence properly left the final determination to the jury.  Accordingly, Dr. Ahmed fails to meet his plain error burden of demonstrating that the outcome of the proceeding would have been different had the instruction not been given or that its inclusion seriously affected the fairness, integrity, or public reputation of the judicial proceeding.

## II. <u>Exclusion of Testimony as Inadmissible Hearsay</u>

Dr. Ahmed's second assertion of error concerns the district court's exclusion of his testimony, as the sole defense witness, regarding statements that certain of his co-defendants made about clinic operations, particularly regarding patients and billing practices, that purportedly caused him to believe that his conduct was lawful.  On appeal, Dr. Ahmed insists these out-of-court statements were not offered to prove the truth of the declarant's statement; rather, they were offered only to show their effect on his state of mind, *i.e.*, to show why he believed the clinic's operation was legitimate.  Such out-of-court statements—offered as evidence of the state of mind of the "in-court" speaker,  not the truth of the words spoken—are not hearsay. *See* FED. R. EVID. 801(c) (statement offered to "prove the truth of the matter asserted in the statement" is hearsay). *See also*, *e.g.*, *United States v. Ballis*, 28 F.3d 1399, 1405–06 (5th Cir. 1994); *United States v. Cantu*, 876 F.2d 1134, 1137–38 (5th Cir. 1989).

Significantly, however, Dr. Ahmed's trial counsel did *not* present this argument to the district court in response to the government's hearsay objections. Instead, in a couple instances, counsel maintained the statements—made by government witnesses—qualified as party-opponent admissions, pursuant to Federal Rule of Evidence 8.01(d)(2)(D). Otherwise,

defense counsel simply accepted the rulings. Furthermore, despite the government's objections being sustained, the record does not reflect an offer of proof of the substance of the desired testimony, or further explanation of its relevance, being made outside the presence of the jury in order to properly preserve the issue in the record for this court's review. Thus, the government argues, we should decline to consider this claim on appeal.

A district court's decision to admit or exclude evidence is generally reviewed for an abuse of discretion. *See United States v. Njoku*, 737 F.3d 55, 73 (5th Cir. 2013). However, Federal Rule of Evidence 103(a)(2) provides that "a party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and . . . if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." FED. R. EVID. 103(a)(2). Despite Dr. Ahmed's failure to present an offer of proof, or a basis for admissibility, as to the excluded testimony, we still may exercise our discretion to review his claim utilizing a plain error standard. *See* FED. R. EVID. 103(e) ("A court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved."). *See also United States v. Clements*, 73 F.3d 1330, 1336 n.4 (5th Cir. 1996); *United States v. Grapp*, 653 F.2d 189, 194 (5th Cir. 1981) (noting that "errors seriously affecting the fairness or integrity of . . . judicial proceedings" would justify an exception to the general rule that the reviewing court would not consider the basis for admission of an out-of-court statement that was not presented to the trial court) (quoting *Anderson v. United States*, 417 U.S. 211, 217 n. 5 (1974)).

Assuming *arguendo* that the district court's rulings constitute plain error, it is difficult to conclude that reversible error occurred without knowing the complete substance and context of Dr. Ahmed's excluded testimony. Although in a few instances Dr. Ahmed had time to answer his attorney's

questions (regarding an out-of-court statement) prior to the government's objection, those answers, without more, are not sufficient to establish a reasonable probability that, but for the error, the outcome of the proceeding would have been different.

This deficiency becomes particularly evident when considered in the context of the other evidence that the parties presented to the jury. In his defense, Dr. Ahmed provided extensive direct testimony—during his nearly two days on the witness stand—as to his good faith and lack of criminal intent. Indeed, while Dr. Ahmed was not permitted to testify regarding what others told him about the clinic and their business operations, he was allowed to tell the jury what he said to others. Additionally, Dr. Ahmed was in fact able to explain to the jury that "[a]s a result of what [he was] told" by [co-defendant] Yepremian about Arca's business practices, he "trusted" Yepremian and believed that the two would "do a straightforward, no hanky-panky business." And, in other instances, Dr. Ahmed either testified without objection relative to his understanding, based on his interactions with others, or managed to sufficiently re-phrase his answer without compromising the intended message.

Finally, as discussed above, the government presented competing evidence suggestive of Dr. Ahmed's actual awareness of Yepremian's fraudulent scheme. Under these circumstances, it is far from apparent that allowing Dr. Ahmed to freely answer all of his counsel's inquiries regarding statements others made to him would have swayed the jury's assessment of his credibility. Thus, because Dr. Ahmed "was able to place his defense before the jury, the fact that the defense was not elicited in the precise manner originally contemplated by the defendant is not a proper basis for reversal." *United States v. Wellendorf*, 574 F.2d 1289, 1290 (5th Cir. 1978).

## III.  Fairness of the Trial

Assuming the district court is found to have erred in more than one of its rulings, Dr. Ahmed contends the cumulative effect (even if harmless when considered individually) deprived him of the constitutional right to a fair trial. For the reasons set forth with the first two issues raised by him, his last is likewise unavailing.

Having found no reversible error, we AFFIRM the judgment of the district court.