# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 19, 2008

Charles R. Fulbruge III
Clerk

No. 07-20210

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

MICHAEL ORJI-NWOSU, also known as Michael Orji

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before BENAVIDES, SOUTHWICK, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Michael Orji-Nwosu ("Orji") was convicted of possession with intent to distribute more than five kilograms of cocaine. On appeal, Orji contends that the district court abused its discretion in submitting a "deliberate ignorance" instruction within the jury charge. Finding no abuse of discretion, we affirm Orji's conviction.

## I. Factual Background

On August 27, 2006, Orji was arrested by an officer with the United States Customs and Border Protection Service at Houston's Bush Intercontinental Airport. Inside two pieces of Orji's luggage marked "heavy," officers discovered four sealed canisters of a protein supplement, each of which contained cocaine

underneath a layer of milkshake powder. The four canisters held a total net weight of 17.94 kilograms – almost forty pounds – of cocaine.

Orji is an attorney who had a civil law practice in Philadelphia, Pennsylvania, and Houston, Texas, and was scheduled to travel from Houston to Nigeria via London, England. At trial, the government submitted evidence that Houston is a source-city for international cocaine trafficking, that Orji had traveled on seven recent occasions from Philadelphia to Houston to London, where he stayed for two or three days, then to Nigeria and then back to Philadelphia. Those trips occurred in April, June, August, and November of 2005, and February, April, and July of 2006. On more than half of the trips, Orji traveled to London with additional luggage that he had not carried from Philadelphia.

The government also presented evidence that on the date in question, Orji was asked security screening questions about his knowledge of the contents of his luggage. He gave standard answers to those questions and did not state that he was transporting items for another person. After discovery of the cocaine, law enforcement personnel at the airport conducted a re-screening of all passengers on Orji's flight, including Orji. He was specifically asked if all items of his luggage belonged to him, and he said they did. He was asked if he packed everything in his luggage, and he said that he did. Again, Orji did not contend that he was transporting sealed containers for another person. Additionally, government witnesses testified that: (1) the canisters were significantly heavier than the six pound weight indicated on the packaging; (2) Orji expressed no emotion upon his arrest; and (3) the street value of the cocaine seized from Orji would be millions of dollars.

In his defense, Orji called a number of witnesses who indicated that it was common within the Nigerian community to transport items for friends and family members. Orji himself testified that he had ongoing business ties to

Houston and Nigeria, and that he was carrying the canisters as a favor for an acquaintance named Samuel Oguguo,[1] whom he had known for twelve years. Orji stated that on August 25, 2006, he encountered Oguguo outside a barbershop, and he was asked to deliver items of clothing and a "protein substance" to Oguguo's brother in Nigeria. Oguguo was driving a new car.

Orji further testified that on the day before his flight to London, Oguguo brought two suitcases – one large and one small – to Orji's hotel room. The suitcases contained four canisters of protein powder, which were wrapped in a black bag, and other items, such as cotton balls and clothing. Because Orji intended to carry computers to Nigeria and recognized that the larger suitcase was too big to be accepted by the airlines, he refused to transport both pieces of luggage. Oguguo, who purportedly travels to Nigeria often because his wife lives there, appeared to be "really desperate," and explained that the heavy canisters were intended for his brother's medical clinic in Lagos. Orji inquired further about the canisters, shook them, and read the label. Oguguo told Orji that the powder was for use in bodybuilding. Finally, Orji agreed to take the canisters. He placed two canisters in his own suitcase and also carried two in Oguguo's smaller suitcase. Orji indicated that Oguguo was "a little hesitant" to allow Orji to carry the canisters all the way to Nigeria. Instead, Oguguo offered to have a cousin pick up the items in London.

Based on the evidence elicited at trial, and over Orji's objection, the district court included a "deliberate ignorance" jury instruction, adopted from Fifth Circuit Pattern Jury Instruction 1.37. The instruction stated,

> You may find that a defendant had knowledge of a fact if you find that the defendant deliberately closed his eyes to what would otherwise have been obvious to him. While knowledge on the part of the defendant cannot be established merely by demonstrating

---

[1] We have only Orji's word that such a person exists. No such person testified at trial, and no one else testified to his existence.

that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact.

Orji was convicted of the single count of the indictment, and was sentenced to 168 months of imprisonment. Orji now asks this court to reverse his conviction.

## II. Standard of Review

We review an appellant's objection to jury instructions under an abuse of discretion standard, "affording the trial court 'substantial latitude' in describing the law to the jurors." United States v. Young, 282 F.3d 349, 353 (5th Cir. 2002) (quoting United States v. Chaney, 964 F.2d 437, 444 (5th Cir. 1992)). We consider whether the "charge, as a whole, was a correct statement of the law and whether it clearly instructed the jurors as to the principles of the law applicable to the factual issues confronting them." United States v. Conner, 537 F.3d 480, 486 (5th Cir. 2008). "The district court may not instruct the jury on a charge the evidence does not support. But in determining whether the evidence reasonably supports the charge, the evidence and all reasonable inferences that may be drawn from it are viewed in the light most favorable to the Government." Id.

## III. Discussion

"'The circumstances which will support the deliberate ignorance instruction are rare.'" United States v. Mendoza-Medina, 346 F.3d 121, 132 (5th Cir. 2003) (quoting United States v. Lara-Velasquez, 919 F.2d 946, 951 (5th Cir. 1990)). However, "[t]his court has consistently upheld such an instruction as long as sufficient evidence supported its insertion into the charge." United States v. Daniel, 957 F.2d 162, 169 (5th Cir. 1992). The instruction is proper when the facts elicited at trial "support an inference that the defendant was subjectively aware of a high probability of the existence of illegal conduct, and that he purposely contrived to avoid learning of the illegal conduct." Id. The term "deliberate ignorance" "denotes a conscious effort to avoid positive

knowledge of a fact which is an element of an offense charged, the defendant choosing to remain ignorant so he can plead lack of positive knowledge in the event he should be caught." United States v. Restrepo-Granda, 575 F.2d 524, 528 (5th Cir. 1978). In Young, we explained that where the facts raise a question about the conduct and intentions of someone other than the defendant, as they do here, a deliberate ignorance instruction is appropriate. Young, 282 F.3d at 353.

In this case, the evidence at trial, viewed in the light most favorable to the government, supported the insertion of a "deliberate ignorance" instruction in the jury charge. Although the government's primary theory was that Orji had actual knowledge of the presence of cocaine in his luggage, the trial testimony also suggests a conscious attempt to avoid incriminating knowledge and not merely "negligent or stupid" conduct. Lara-Velasquez, 919 F.2d at 951.

The evidence established that Orji was subjectively aware of a high probability of illegal conduct. According to Orji's testimony, Oguguo, an acquaintance who traveled frequently to Nigeria, approached Orji. Oguguo requested that Orji transport two heavy suitcases, including one that was so large that Orji believed it would not be accepted by the airline. Inside these suitcases, the items that Oguguo was "really desperate" to have transported were four canisters, wrapped in a black bag, purportedly containing protein powder. These containers, holding almost forty pounds of cocaine and additional protein powder, were clearly labeled as holding only six pounds each, and Orji claimed to have been puzzled enough to shake the notably heavy canisters. As a licensed attorney aware of heightened security on flights to London in 2006, Orji would be cognizant of a high probability of the existence of illegal conduct when his friend brought two suitcases containing heavy containers covered in plastic bags.

Further, Orji's trial testimony documents a purposeful contrivance to avoid learning of the illegal conduct. By his own testimony, Orji apparently accepted at face value Oguguo's curious claim that the four canisters of protein powder would be used for bodybuilding purposes at a medical clinic. Despite Oguguo's desperation to have the containers transported, Orji did not further investigate when Oguguo was "hesitant" to have him transport the items from London to Nigeria. Since the rationale for having Orji transport the items to Nigeria was to avoid theft by Nigerian courier services, it would make little sense to carry the items only as far as London. Orji's statements about his luggage to two different people at the airport are inconsistent with his trial testimony. Assuming arguendo that Orji's trial testimony about the canisters was true, the airport statements show a purposeful attempt to avoid discovery of what was in the canisters Oguguo gave him. The jury could reasonably infer that an experienced traveler such as Orji would know that if he said that the luggage contained items unknown to him, the items would be thoroughly searched.

Orji's testimony that he failed to further inspect the canisters and question Oguguo's conduct, coupled with his answers to officials at the airport (which were inconsistent with his trial testimony), suggest a conscious attempt to avoid incriminating knowledge, not mere negligence. Thus, the district court could have reasonably concluded that the evidence at trial satisfied the second prong of the "deliberate ignorance" test.[2]

In any case, this court has explained that "'an error in giving the deliberate ignorance instruction is harmless where there is substantial evidence of actual knowledge.'" Mendoza-Medina, 346 F.3d at 134 (quoting United States

---

[2] The actual wording of the instruction, adopted from the Fifth Circuit Pattern Jury Instruction 1.37, is a correct statement of the law. See FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Criminal Cases) § 1.37; see also United States v. Turner, 960 F.2d 461, 464 (5th Cir. 1992) (holding that district court did not err in giving instruction that tracked Fifth Circuit Pattern Jury Instructions and was correct statement of law).

v. Saucedo-Munoz, 307 F.3d 344, 349 n.5 (5th Cir. 2002)).  Here, the government submitted evidence that Orji, a licensed attorney, made eight costly trips from Philadelphia, via Houston and London, to Nigeria, within sixteen months. During most of those trips, Orji picked up additional luggage before traveling to London, and he usually remained in Nigeria for only a few days.  Orji showed no emotion when arrested, and he claimed to the British Airways representative that he had packed his own luggage.  During the re-screening, he again stated that all items in his luggage belonged to him.

If Orji's answers to the airport questions were truthful, then the cocaine canisters were packed by him and belonged to him.  If he was merely an "unwitting dupe," as he now claims, then his repeated failure in response to the airport questions to admit his supposed role as an innocent delivery service is highly suspect.  Finally, the jury could have easily concluded that Oguguo, alleged to be a casual acquaintance who makes frequent trips to Nigeria himself, would not be willing to entrust millions of dollars worth of cocaine to an unknowing accomplice.  In sum, the evidence of Orji's actual knowledge of the cocaine was substantial enough to render harmless any error in giving the "deliberate ignorance" instruction.

Accordingly, the district court did not abuse its discretion in providing the instruction, and Orji's conviction is AFFIRMED.