**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 23, 2009

Charles R. Fulbruge III
Clerk

No. 07-20471

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

DAVID DENNIS BROWN; JAYSHREE PATEL; PIUS JAMES EKIKO;
CHARLES FRANK SKRIPKA, JR

Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:04-cr-00349-5

Before BARKSDALE, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

The appellants in this case were doctors, medical equipment suppliers, and marketers who were charged in a sixty-eight count indictment for conspiring to fraudulently bill Medicare for power wheelchairs.[1] They now appeal, raising numerous challenges to their convictions and sentences. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Not all defendants were charged with all counts. The specific charges against each defendant-appellant are discussed below.

I. FACTS

Viewed in the light most favorable to the jury's verdict, the record establishes that appellants Jayshree Patel, Charles Frank Skripka, Jr., Pius James Ekiko, and David Dennis Brown acted to defraud Medicare by fraudulently issuing or marketing prescriptions for power wheelchairs.

Ekiko and Brown recruited Medicare beneficiaries to a clinic owned by Lewis Gottlieb, a licensed physician, by promising the patients a free power wheelchair and compensation for making the trip. Patel and Skripka, licensed physicians employed at Gottlieb's clinic, wrote the prescriptions for power wheelchairs and certified to Medicare that the wheelchairs were medically necessary. Gottlieb then sold the prescriptions and accompanying certificates of medical necessity (CMNs) to suppliers of durable medical equipment (DME), including Ekiko. In turn, the DME suppliers provided the patients with motorized wheelchairs or scooters and sought reimbursement from Medicare for the cost of the equipment.[2] To maximize their profits, the DME suppliers, including Ekiko, often billed Medicare for a power wheelchair, but delivered a less-expensive scooter to the patient.

During the 2002 year, Gottlieb's clinic saw over one hundred patients per day. The doctors rarely spent more than a few minutes with each patient and approximately ninety-five percent of the patients were prescribed a power wheelchair. The high volume of patients receiving power wheelchairs covered by Medicare triggered an investigation by federal law enforcement officers.

Shortly thereafter, a grand jury handed down a sixty-eight count indictment. Among other things, the indictment charged Patel, Brown, Ekiko,

---

[2] Medicare's "Part B" regulations authorize Medicare to reimburse suppliers of DME for the equipment they provide to Medicare beneficiaries. During the 2002 year, Medicare was reimbursing DME suppliers $4200 for a motorized wheelchair, and $1700 for a motorized scooter.

and Skripka with conspiracy to commit health-care fraud, to violate the anti-kickback statute, to commit wire fraud, and to commit mail fraud. All were also charged with health-care fraud and aiding and abetting wire fraud. Ekiko and Skripka were also charged with aiding and abetting money laundering by concealment. Finally, Ekiko was also charged with aiding and abetting money laundering by promotion. At trial, Gottlieb and a DME supplier named Prince Yellowe testified as Government witnesses, having reached plea agreements with the Government.

Patel was convicted of ten counts of health-care fraud. Ekiko was convicted of the conspiracy charge, several counts of health-care fraud, wire fraud, money laundering by promotion, and money laundering by concealment. Skripka was convicted of the conspiracy charge, several counts of health-care fraud, one count of wire fraud, and several counts of money laundering by concealment. Brown was convicted of the conspiracy charge, several counts of health-care fraud, and aiding and abetting wire fraud. The instant appeal followed.

## II. MERITS

Patel, Ekiko, and Skripka appeal their convictions and their sentences. Brown appeals his sentence.

### A. Sufficiency of the Evidence Challenges

Patel, Ekiko, and Skripka challenge the sufficiency of the evidence to support their convictions.[3] When an insufficiency-of-the-evidence challenge is properly presented to the district court through a motion for judgment of

---

[3] Ekiko, Patel, and Skripka also attempt to adopt their co-appellants arguments through Federal Rule of Appellate Procedure 28(i). But challenges to the sufficiency of the evidence are fact-specific inquiries, and the appellants may not adopt or incorporate the arguments of their co-appellants through Rule 28(i). *United States v. Stephens*, 571 F.3d 401, 404 n.2 (5th Cir. 2009) (noting that sufficiency of the evidence challenges are fact-specific, barring application of Federal Rule of Appellate Procedure 28(i)).

acquittal, we ask "whether a reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt." *United States v. Mauskar*, 557 F.3d 219, 229 (5th Cir. 2009), *cert. denied*, 129 S. Ct. 2756 (2009) (quotation marks and citations omitted). In evaluating the sufficiency of the evidence, we view "all evidence and all reasonable inferences drawn from it in the light most favorable to the government." *Id.*[4] This standard applies regardless of whether the evidence is direct or circumstantial. *United States v. Mergerson*, 4 F.3d 337, 341 (5th Cir. 1993).

## 1. Patel

Patel asserts that the evidence is insufficient to support her convictions for health-care fraud because she did not knowingly or intentionally defraud Medicare. But the Government introduced evidence from which a reasonable juror could infer that, by signing the CMN form, Patel certified to Medicare that each patient was currently using a wheelchair, suffered from physical limitations that made a wheelchair necessary, and was incapable of using a manual wheelchair.[5] The Government introduced evidence that Patel approved

---

[4] Patel asserts that this court reviews the sufficiency of the evidence de novo. That is incorrect. This court does review a district court's denial of a motion for judgment of acquittal de novo; however, even under that standard we ask whether a reasonable jury could find the evidence sufficient to support a finding of guilt beyond a reasonable doubt. *United States v. Percel*, 553 F.3d 903, 910 (5th Cir. 2008). Conversely, where "a motion for judgment of acquittal insufficiently preserves a claim, our review is only for a manifest miscarriage of justice." *United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007).

[5] Patel and Skripka argue that the requirements to receive a power wheelchair were ambiguous and inconsistent at the time the health-care fraud occurred. For the first time on appeal, they assert that this court should take judicial notice of congressional testimony regarding purported ambiguities in the Medicare coverage guidelines, which were disseminated through the DME suppliers' manual. We need not reach this issue because the Government introduced evidence from which a reasonable jury could conclude that Patel and Skripka were guilty of health-care fraud. The Government introduced evidence that Patel and Skripka were aware of the standard contained on the CMN form, and nonetheless certified patients for power wheelchairs who did not meet that standard. Because this evidence is sufficient to sustain Patel and Skripka's convictions for health-care fraud, we need not reach the issue of whether the requirements to receive a power wheelchair in the DME suppliers'

patients for power wheelchairs who were able to walk into the clinic. Patel certified to Medicare that these patients required power wheelchairs without investigating whether they exhibited physical restrictions or were capable of operating a manual wheelchair, as required by the CMN. This is sufficient to support a finding that Patel committed health-care fraud. *See United States v. Ogba*, 526 F.3d 214, 232 (5th Cir. 2008) ("In signing these forms and certifying their truth, [the doctor] would have had to deliberately ignore the requirements for prescribing a wheelchair."), *cert. denied*, 129 S. Ct. 220 (2009); *Mauskar*, 557 F.3d at 230 (rejecting sufficiency of the evidence challenge to health-care fraud conviction where doctor was aware that the patient was able to jog at the time he prescribed a motorized wheelchair).

Patel claims—and the Government does not dispute—that she crossed out the words "and use" on the CMN form.[6] She asserts that, in doing so, she refused to certify that the patients were using a wheelchair at the time of the evaluation; rather, she certified only that she believed they would benefit from one, regardless of the Medicare standard. We need not reach the effect of Patel's crossing out this language because the Government introduced substantial circumstantial evidence that Patel had the requisite knowledge and intent to commit health-care fraud.

The record is replete with circumstantial evidence that Patel had constructive knowledge of Gottlieb's fraudulent scheme: the large number of patients in the clinic, Gottlieb's failure to review test results or adhere to the proper standard on the CMN, and the presence of recruiters and DME suppliers

---

manual were ambiguous. We note, however, that neither Patel nor Skripka presented any evidence that they relied on a reasonable interpretation of the Medicare regulations when prescribing power wheelchairs; rather, they disavowed any knowledge of the substance of the regulations and claimed that they never received the DME suppliers' manual.

[6] Before Patel's crossing-out of "and use," this portion of the form read as follows: "Does the patient require and use a wheelchair to move around in their residence?"

in the clinic. As we explain below, this evidence supported an instruction to the jury on deliberate ignorance, and the record contains sufficient evidence from which a reasonable jury could conclude that Patel was aware of the health-care fraud and acted to further Gottlieb's scheme.[7]

2. Ekiko

Ekiko asserts that the evidence is insufficient to support his convictions for conspiracy and money laundering.[8] We conclude that the evidence is sufficient to support the challenged convictions.

The Government introduced testimony that Ekiko recruited Medicare beneficiaries to the clinic, paid Gottlieb for prescriptions and CMN forms, and billed Medicare for the cost of supplying power wheelchairs to these patients. This evidence is legally sufficient to support a conviction for conspiracy to defraud Medicare. *See, e.g.*, *Mauskar*, 557 F.3d at 229.

The evidence also supports Ekiko's convictions for money laundering. Ekiko does not dispute that he deposited the money he received from Medicare into his bank accounts. This evidence is sufficient to support a finding that he

---

[7] While Gottlieb did withhold information regarding the kickbacks from Patel and Skripka, he did not conceal the substance of the CMN form, the prospect of criminal liability for falsely certifying patients, or the existence of the vast number of recruiters, DME suppliers, and Medicare beneficiaries in the clinic. Indeed, Gottlieb even warned Patel and Skripka that other doctors were unwilling to risk signing the CMN forms out of fear of liability. Thus, the evidence is legally sufficient to support the jury's finding that Patel knowingly committed health-care fraud.

[8] Ekiko also raises a cursory challenge to his conviction for wire fraud. To the extent that he provides no factual or legal analysis of this challenge, he has waived the issue. *Jason D.W. ex rel. Douglas W. v. Houston Indep. Sch. Dist.,* 158 F.3d 205, 210 n.4 (5th Cir. 1998) ("[F]ailure to provide any legal or factual analysis of an issue on appeal waives that issue."). We also note that the Government introduced substantial evidence that Ekiko used the interstate wires to fraudulently obtain reimbursement from Medicare for the cost of providing power wheelchairs. Accordingly, the Government introduced sufficient evidence to support his conviction for wire fraud. *See, e.g.*, *United States v. Pedrick*, 181 F.3d 1264, 1267-68 (11th Cir. 1999) (finding evidence that defendant submitted fraudulent billing claims to Medicare to be sufficient to support convictions for wire fraud).

used the money for an illicit purpose. *See United States v. Brown*, 186 F.3d 661, 668 n.12 (5th Cir. 1999) ("Courts have held that a promotion money laundering offense may occur when a defendant receives and deposits criminally derived funds, in which case the *deposit* of the funds is the transaction intended to promote the specified unlawful activity.").

3. Skripka

Skripka challenges the sufficiency of the evidence to support his convictions for conspiracy to commit health-care fraud, health-care fraud, wire fraud, and money laundering by concealment. Reviewing the record in the light most favorable to the jury's verdict, Skripka's challenges fail.

First, the Government introduced sufficient evidence to support Skripka's conspiracy conviction. Prince Yellowe testified that Skripka knew that DME suppliers were paying cash kickbacks to the clinic because Skripka was present for many of the transactions.[9] Skripka asserts that Yellowe's testimony is not credible because he was testifying pursuant to a plea agreement with the Government. But this court reviews only the sufficiency of the evidence, not the credibility of witnesses. *United States v. Brown*, 553 F.3d 768, 780 (5th Cir. 2008), *cert. denied sub nom Combs v. United States*, 129 S. Ct. 2812 (2009), *and cert. denied*, 78 U.S.L.W. 3177 (2009).

Second, the evidence is sufficient to support Skripka's convictions for health-care fraud. The Government introduced evidence that Skripka certified patients for power wheelchairs without conducting a meaningful physical examination, and with the knowledge that the patients failed to satisfy the Medicare requirements. The Government also introduced evidence that Skripka

---

[9] Skripka argues that his conviction should be overturned because he was unaware of all members of the conspiracy. But the Government was not required to prove that Skripka knew all of the members of the conspiracy. *See United States v. Garcia Abrego*, 141 F.3d 142, 155 (5th Cir. 1998).

knew that Gottlieb was profiting from the issuance of prescriptions and CMNs, and Skripka continued to falsely certify patients for power wheelchairs.

In addition to this testimony, there was other circumstantial evidence before the jury that supported its verdict. This evidence includes the large number of patients being transported by Brown to the clinic each day and the dispensing of an unusually high number of power wheelchairs. In light of this evidence, a reasonable jury could readily conclude that Skripka was aware of the scheme to defraud Medicare and actively participated in the health-care fraud. *United States v. Achobe*, 560 F.3d 259, 264 (5th Cir. 2008), *cert. denied*, 78 U.S.L.W. 3171 (2009).

Third, the evidence is sufficient to support Skripka's conviction of wire fraud. In addition to the evidence demonstrating that Skripka was aware of the scheme to defraud Medicare, the Government introduced evidence that Skripka opened up a bank account to allow Medicare funds to be deposited after Gottlieb's accounts were frozen by the FBI. Based on this evidence, a rational jury could find that Skripka was guilty of wire fraud. *See United States v. Stalnaker*, 571 F.3d 428, 436 (5th Cir. 2005) ("[O]nce membership in a scheme to defraud is established, a knowing participant is liable for any wire communication which subsequently takes place or which previously took place in connection with the scheme.") (quotation marks and citation omitted).

Finally, the evidence is sufficient to support Skripka's conviction for aiding and abetting money laundering by concealment. The evidence introduced at trial established that Skripka opened up multiple bank accounts for the purpose of concealing the Medicare funds from the Government. This evidence is sufficient to support a conviction for money laundering by concealment. *See Brown*, 553 F.3d at 787.

B. Improper Commentary on the Evidence

Ekiko argues that he was denied his right to a presumption of innocence because the Government referred to Ekiko as a "co-conspirator" when responding to a hearsay objection. Ekiko did not object at the time the statement was made; thus, the issue is reviewed for plain error. *United States v. Stephens*, 571 F.3d 401, 408 (5th Cir. 2009). To obtain relief, Ekiko must demonstrate (1) error; (2) that the error is plain; and (3) that it affected his substantial rights. *Id.* Even if Ekiko meets that burden, this court still retains the discretion to "decide whether to reverse the conviction, which [it] generally will not do unless the plain error seriously affected the fairness, integrity, or public reputation of the judicial proceeding." *Id.* (quotation marks and citation omitted).

Examining the Government's statement in context, Ekiko cannot demonstrate plain error or that the error seriously affected the fairness of the proceedings. Initially, he cannot even demonstrate that the Government's statement was improper. The Government merely stated an exception to the hearsay rule and did not elaborate or otherwise comment on the evidence. Further, the Government's statement was isolated, targeted at the court rather than the jury, and was only one statement during a lengthy cross-examination. Even assuming the Government's statement was improper, it was not prejudicial. *See, e.g.*, *United States v. Hitt*, 473 F.3d 146, 161 (5th Cir. 2006). Accordingly, Ekiko's argument fails.

C. Deliberate Ignorance Instruction

Patel and Skripka assert that the district court erroneously gave the jury an instruction on deliberate ignorance. The district court gave three different instructions on deliberate ignorance for the health-care fraud, wire fraud, and money laundering concealment counts.

Patel and Skripka objected at trial to the deliberate ignorance instruction. Accordingly, we review the decision to give the jury the instruction for an abuse

of discretion.[10] *Ogba*, 526 F.3d at 230. We ask whether the district court's instructions, taken in their entirety, made "a correct statement of the law *and whether* [the instructions] clearly instruct[ ] jurors as to the principles of law *applicable to the factual issues confronting them.*" *United States v. Lara-Velasques*, 919 F.2d 946, 950 (5th Cir. 1990) (quotation marks and citation omitted). The court's instructions must be legally accurate, as well as factually justified. *Id.* In assessing whether the evidence supports a given instruction, we view "the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the Government." *Id.*

A deliberate ignorance instruction is warranted if the evidence at trial raises two inferences: "(1) the defendant was subjectively aware of a high probability of the existence of the illegal conduct; and (2) the defendant purposefully contrived to avoid learning of the illegal conduct." *Lara-Velasquez*, 919 F.2d at 951; *see also United States v. Orji-Nwosu*, 549 F.3d 1005, 1009-10 (5th Cir. 2008).

Whether a defendant purposefully contrived to avoid learning of the illegal conduct may be established by direct or circumstantial evidence. "[W]here the facts raise a question about the conduct and intentions of someone other than the defendant . . . a deliberate ignorance instruction is appropriate." *Orji-Nwosu*, 549 F.3d at 1009 (citation omitted).

In this case, the Government presented substantial evidence from which a reasonable jury could conclude that Patel and Skripka were subjectively aware

---

[10] The Government asserts that Skripka did not object to the deliberate ignorance instruction as it related to the substantive wire fraud counts or money laundering counts. The Government concedes that the district court issued a pretrial order stating that an objection from one party would be deemed an objection by all parties, unless counsel "expressly opts out of an objection." But the Government argues that Skripka expressly opted out of the objection by stating that he had "no objections to the charge." We need not decide whether this is sufficient to opt out of the objection, because Skripka's challenge fails even under the more favorable abuse of discretion standard.

of a high probability of illegal conduct. The Government presented evidence of the high rate at which patients were being seen and approved for motorized wheelchairs, despite the fact that the patients were ambulatory at the time of the evaluation. The Government also presented evidence that both Patel and Skripka were aware that the prescriptions and CMNs were not being delivered to the patients. Further, the Government introduced evidence that the clinic was overcrowded with recruiters and DME suppliers, and that the patients were being brought in by the van-load from neighboring states. Finally, the Government introduced evidence that both Patel and Skripka knew of the Medicare standard contained on the CMN form, but repeatedly certified patients that did not meet that standard. This evidence raised an inference that Patel and Skripka were subjectively aware of a high probability that illegal conduct was occurring at the clinic.

The Government also presented circumstantial evidence that Patel and Skripka engaged in a "purposeful contrivance to avoid learning of the illegal conduct." Gottlieb testified that he warned Patel and Skripka that many doctors would refuse to sign the CMN form based on his interpretation because they did not want to certify those findings to Medicare. Patel testified that she would simply shut her office door and ignore the persons in the clinic—including twenty or more recruiters present on a daily basis. This evidence supports a conclusion that she purposefully contrived to avoid learning of the fraudulent scheme. *See*, *e.g.*, *Orji-Nwosu*, 549 F.3d at 1009 (finding the purposeful contrivance requirement satisfied where the defendant accepted a strange explanation at face value without further investigation despite strong circumstantial evidence of a crime). Prince Yellowe testified that Skripka was present when cash payments were made for the CMNs. Skripka testified that, despite all of the circumstantial evidence of fraud, he accepted Gottlieb's statement that the clinic was in compliance with Medicare regulations. Based

on this evidence, the district court was entitled to instruct the jury on deliberate ignorance.[11]

## D. Sentencing Errors

On appeal, Ekiko and Brown argue that the district court erred by applying a three-level enhancement to their sentences based upon a finding that they were managers or supervisors in the criminal scheme. Patel argues that the district court erred by applying a twenty-level enhancement to her sentence based upon a finding that she was responsible for an intended loss of almost $12,000,000.

### 1. Upward Adjustment for Role in Offense

Ekiko and Brown assert that the district court erred by adjusting their offense levels upward three levels based upon their roles in the conspiracy. The district court determined that Brown and Ekiko were managers or supervisors in the criminal activity and that the criminal enterprise was extensive. Accordingly, the district court raised Brown's and Ekiko's offense level by three. *See* U.S. SENTENCING GUIDELINES MANUAL § 3B1.1(b) (2008). Brown and Ekiko challenge this determination on appeal.

#### a. Brown

Brown did not file any written objections to the presentence report (PSR), and he did not object to the imposition of the three-level enhancement at sentencing. As a result, this court reviews his objection on appeal for plain error. *United States v. Ronquillo*, 508 F.3d 744, 748 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 2458 (2008).

---

[11] Patel also argues that the district court's instruction diluted the mens rea requirement and gave the jury the ability to find her guilty if she "should have known" that criminal wrongdoing was occurring. But the court's instructions explicitly warned the jury that "demonstrating that the defendant was negligent, careless or foolish" was insufficient. Thus, the court did not abuse its discretion by instructing the jury on deliberate ignorance. *Ogba*, 526 F.3d at 232.

On appeal, Brown argues that he was not a manager or supervisor. Specifically, Brown asserts that, at best, he "employed other people who in turn may have paid individuals brought to Houston as an incentive to take the trip." This concession alone is sufficient to support a finding that Brown was a manager. *Mauskar*, 557 F.3d at 235 (affirming district court's application of the enhancement because the defendant supervised at least one criminally responsible participant and the criminal activity charged was otherwise extensive). The evidence introduced at trial demonstrated that Brown brought in over 521 patients from the state of Louisiana during the August 22, 2002 to March 6, 2003 time period. Brown also offered to pay the Medicare beneficiaries extra money if they brought in patients on their own. In sum, Brown's actions demonstrate that he occupied a manager or supervisor role in the conspiracy. The district court did not plainly err by increasing his offense level by three for the role he played in the offense.

b. Ekiko

Ekiko argues that he did not have an manager or supervisor role in the offense because the Government never established that the persons Ekiko supervised or managed participated in the fraud. Ekiko objected to the application of the three-level enhancement at sentencing. As a result, we review the district court's factual findings for clear error and the application of the sentencing guidelines de novo. *United States v. Gould*, 529 F.3d 274, 276 (5th Cir. 2008) We review the district court's determination that an individual was a criminally responsible participant for clear error, and ask whether the determination is "plausible in light of the record as a whole." *See United States v. Holmes*, 406 F.3d 337, 363 (5th Cir. 2005).

The commentary to U.S. Sentencing Guidelines § 3B1.1 states that a participant is "a person who is criminally responsible for the commission of the offense, but need not have been convicted." At sentencing, the Government

argued that Allen Driver, King Robinson, Shenike Harrison and Michelle Morris were participants subject to Ekiko's control. Harrison testified that Robinson was hired to drive patients to the clinic and deliver scooters for Ekiko. Driver testified that he was hired to do the same. Ekiko asserts that these individuals were independent contractors, not employees. But the testimony established that Ekiko told the individuals where to go and what to do with the patients. The fact that Ekiko did not control every aspect of their employment does not preclude a finding that he supervised their actions.[12] *Mauskar*, 557 F.3d at 235 (affirming application of three-level enhancement where testimony established that the appellant paid recruiters for referring patients, requested kickbacks and controlled which recruiters could bring patients in). Thus, the district court did not commit clear error in concluding that Ekiko occupied an aggravating role in the offense.

2. Upward Adjustment Based on Intended Loss Computation

Patel raised two objections to the calculation of her total offense level at sentencing. She renews both objections on appeal. First, she argues that her total offense level is not supported by the record because the jury acquitted her on the conspiracy charges. As a result, Patel asserts that she cannot be held responsible for amounts lost because of the conspiracy. Second, Patel claims

---

[12] Ekiko asserts in his reply brief that the offense was not extensive within the meaning of § 3B1.1 because he was not responsible for the bulk of the Medicare fraud. But the third comment to § 3B1.1 states that "[i]n assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." U.S. SENTENCING GUIDELINES § 3B1.1 cmt. n.3. In this case, the Government introduced substantial evidence that Ekiko utilized the services of Gottlieb, Patel, Skripka, and Rodriguez to defraud Medicare. In addition, the evidence demonstrated that Ekiko used recruiters to drum up business at Gottlieb's clinic and increase his profits. Thus, the evidence demonstrates that the offense was extensive.

that the PSR inappropriately relied on information that was beyond the scope of the trial witnesses' testimony.

The district court's determination of the intended amount of loss is a factual finding that we review for clear error. *United States v. Klein*, 543 F.3d 206, 214 (5th Cir. 2006). The district court's method of calculation, however, is reviewed de novo. *Id.*

Patel asserts that the amount of loss calculated is unfairly based on the conspiracy charge of which she was acquitted. The fact that Patel was acquitted of the conspiracy charge does not preclude the court from taking into account her participation in the scheme. This court has repeatedly held that "a jury's verdict of acquittal on some . . . counts does not prevent the sentencing court from considering conduct underlying the acquitted count as long as that 'related' conduct has been proved by a preponderance of the evidence." *United States v. Pineiro*, 470 F.3d 200, 206 (5th Cir. 2006).

Patel has not shown that the district court's enhancement of her sentence based on acquitted conduct was in error. She asserts only that the evidence suggests that her Medicare account was being used without her knowledge and that the testimony given in support of the district court's finding was based on speculation. She also asserts that she was not given a forum to confront witnesses. There is no basis for these assertions.

Agent Judy Sly of the Department of Health and Human Services testified that approximately $14 million was billed to Patel's unique physician identification number. Patel asserts that Agent Sly's testimony supports an inference that Patel's account was being used without her knowledge because each billing code was not supported by an accompanying signed CMN. But Patel does not deny that she pre-signed CMN forms and approved over ninety-five percent of her patients. Agent Sly's testimony established that the CMNs signed by Patel were then sold to DME suppliers who used the prescriptions to generate

over $9 million in reimbursement fees from Medicare. Patel does not suggest that the district court's mathematical calculations were in error; rather she questions the credibility of the testimony relied on by the district court.[13] This is insufficient to warrant reversal of the district court's findings.

### III. CONCLUSION

For the reasons set forth above, the judgment of the district court is AFFIRMED.

---

[13] Similarly, Patel's assertion that her signature was forged is unsupported by the evidence. Charlotte Ware, a handwriting expert, testified that only a few documents containing Patel's signature were an inconclusive match to Patel's handwriting sample. Her testimony does not support Patel's assertion that forgery was rampant or an inference that the bulk of Patel's CMN forms were forged.